THE QUINCY MINING COMPANY v. JOSEPH KITTS.

*Master and servant—Negligence of fellow-employees.*

A servant cannot recover from his master for an injury received in his service without showing some fault on the part of the master.

A servant assumes all the usual risks of his employment including the risk of injury from the carelessness of fellow-servants, provided they have been prudently chosen and not retained in the employer's service after he has knowledge of their unfitness or negligence.

A master cannot, by delegating it to another, relieve himself of the duty of exercising due care in the employment and retention of competent servants; and if he does delegate it to a general manager, foreman or superintendent, he remains responsible.

A servant does not assume the risk of the master's negligence, or of that of any one to whom the master entrusts his superintending authority.

A servant assumes the risk of a fellow-servant's negligence even though the latter is in a position of greater responsibility or a different line of employment; so long as both are in the same general business, so that the negligence of one may contribute to the danger of the other.

Error to Houghton.    Submitted October 16 and 17. Decided October 28.

TRESPASS ON THE CASE.    Defendant brings error.

*Chandler & Grant, T. L. Chadbourne,* and *Ashley Pond* for plaintiff in error.    Mere proof of an accident and consequent injury to an employee are not sufficient proof of the negligence of his employer, who is not bound by

a fellow-servant's knowledge of defects, *Steffen v. C. & N. W. Ry. Co.*, 46 Wis., 259: 18 Am. L. Reg., 435; *Mobile & Ohio R. R. v. Thomas*, 42 Ala., 672; *Columbus, etc. R. R. v. Troesch*, 68 Ill., 545; *Altreuter v. H. R. R. R.*, 2 E. D. Smith, 151; *Robinson v. F. & W. R. R.*, 7 Gray, 92, unless he is a superintendent or person to whom is committed the general conduct of a particular branch of the business, *Ladd v. New Bedford R. R.*, 119 Mass., 412; Cooley on Torts, 542-5; Whart. Neg., §§ 223-4; the knowledge of a servant of a lower grade would not bind the master, *Ft. Wayne, Jack. & Sag. R. R. v. Gildersleeve*, 33 Mich., 134; it is only in certain cases that negligence is presumed from the fact, *LeBurron v. East Boston Ferry Co.*, 11 Allen, 312; Shearman & Redf. on Negligence, § 12; the knowledge of a foreman, managing agent or superintendent, that machinery or appliances in use are defective, is not sufficient to charge the employer, *Wigmore v. Jay*, 5 Exch., 354; *Searle v. Lindsay*, 11 C. B. (N. S.), 429; *Gallagher v. Piper*, 16 id., 669; *Feltham v. England*, 7 B. & S., 676; *Wilson v. Merry*, L. R. 1 H. of L., Scotch, 326; *Howells v. Steel Co.*, L. R. 10 Q. B., 62; *Railroad Co. v. Arnold*, 31 Ind., 174; *Hanrathy v. Railroad Company*, 46 Md., 280: but see *Cumberland, etc. R. R. v. State*, 44 Md., 283; if an employer obtains competent servants and furnishes safe machinery, he is not liable to an employee for an injury resulting from a subsequent defect in the machinery, unless he, or an agent to whom he has delegated general control of the whole or a particular branch of the business, knows or ought to have known of the defect in the appliances, *Harrison v. Railroad Company*, 31 N. J. Law, 293; *Warner v. Erie R. R.*, 39 N. Y., 468; *Flike v. Bost. & Alb. R. R.* 53 N. Y., 550; *Booth v. Bost. & Alb. R. R.*, 73 N. Y., 38; *Colorado Cent. R. R. v. Ogden*, 3 Col., 499. See *Keegan v. Western R. R.*, 8 N. Y., 175; *Cayzer v. Taylor*, 10 Gray, 274; *Noyes v. Smith*, 28 Vt., 59; *Wedgwood v. C. & N. W. R. R.*, 41 Wis., 478; *Mullan v. Steamship Co.*, 78 Penn. St., 25; *Rail-*

*road Company v. Cavan's Adm'r*, 9 Bush, 559; *Long v. Pacific Railroad*, 65 Mo., 225.

*Dan. H. Ball* for defendant in error.    The nature of an injury may be evidence of negligence, *Mullen v. St. John*, 57 N. Y., 567; *Brickner v. N. Y. Cent. R. R.*, 2 Lans., 506; *Stokes v. Saltonstall*, 13 Pet., 181; Whart. on Neg. § 421; an employer who entrusts to agents the execution of duties which he personally owes to his employees is as responsible for the negligence of such agents in executing such duties as for the negligence of any of his agents in the execution of the duties which he owes to others than employees, *Ford v. Fitchburg R. R.*, 110 Mass., 255-6, 259-61; *Avilla v. Nash*, 117 Mass., 318; *Laning v. N. Y. Cent. R. R.*, 49 N. Y., 521; *C. & N. W. Ry. v. Swett*, 45 Ill., 202; *C. & A. R. R. v. Shannon*, 43 Ill., 344; *C. & A. R. R. v. Sullivan*, 63 Ill., 295; *C. B. & Q. R. R. v. Gregory*, 58 Ill., 284-5; *C. & N. W. Ry. v. Jackson*, 55 Ill., 496; *T. P. & W. Ry. v. Conroy*, 68 Ill., 562; *Thompson v. Drymala*, 1 N. W. Rep., 255; *Brabbits v. Railroad Company*, 38 Wis., 289; *Shanny v. Androscoggin Mills*, 66 Me., 420; Wood on Master and Servant, § 438; Whart. Neg. § 232 et seq.; Cooley on Torts, 557, 561; see 5 Southern Law Review, N. S., 200, 380.

COOLEY, J.    Kitts sued the mining company to recover damages for an injury alleged to have been suffered by himself through the company's negligence while in its employ as a miner.    The declaration is given in the margin.*    It appears from the evidence that what in

---

* COUNTY OF HOUGHTON, ss.

Joseph Kitts, of said county, complainant herein, by Ball & Owen, his attorneys, complains of the Quincy Mining Company, a corporation, existing under the laws of this State and doing business in said county of Houghton, defendant herein, of a plea of trespass on the case, filing this declaration as commencement of suit.    For that whereas, the said defendant, heretofore, to wit: on the 20th day of April, A. D. 1876, and for a long time prior thereto, to wit: at said county of Houghton, was the owner of, and was operating and working a certain copper mine there situated, for the working of which said defendant required and employed a large number of men,

the declaration is called a bridge over the chasm where the accident occurred, consisted merely of two timbers laid side by side, one of which broke and fell with the plaintiff as he was passing over. The timbers were of pine, and had been in place some five years. The evidence tended to show that they disclosed no defect when put in, and that if sound originally, five years was not time sufficient to cause dangerous decay or weakness. The only evidence of any effort to examine the broken timber after the accident, showed that it fell among others where it could not be distinguished, and the occasion of the breaking was therefore wholly unexplained. Other persons including the plaintiff himself had crossed upon these timbers with safety on the same day.

It was suggested, rather than urged, on the part of the defense, that the timber may have been weakened by a fragment of a rock falling upon it from above, and an inference to this effect might be drawn from the proofs. On the other hand the effort of the plaintiff seems to have been directed to satisfying the jury that

and wherein were shafts and other excavations, sunk to a great depth, and sundry and numerous drifts or levels, in which, for the purpose of operating said mine, a large number of men employed as aforesaid were required to work, and to pass and repass; and that in the floor of one of said "drifts" or "levels" of said mine, to wit: that known as the "hundred fathom level," along which the employees of said defendant were required to pass and repass many times daily, was a deep and dangerous excavation, which required to be bridged over and was bridged over by said defendant, in order that its said employees, while engaged about the work of said defendant, and under its direction and requirement, might pass along said "drift" or "level," and said employees were, by said defendant, required to pass over said excavation upon the bridge so constructed by it, about their work in said mine.

And by reason of the premises, it became and was the duty of said defendant to use and exercise reasonable care and diligence, in the construction and maintenance of such bridge, and to keep the same in a secure and safe condition for its said employees to pass over, so long as they were so required to pass over said bridge, in doing the work of said defendant.

Yet the said defendant, well knowing the premises, did not nor would keep and maintain said bridge in such condition as to be safe for its said employees to pass over, but negligently and carelessly suffered the same to become unsafe, weak and insecure, and suffered the planks of which said bridge was constructed to become decayed, and negligently and carelessly suffered said decayed and weak planks to remain in said bridge, for its said employees to pass over,

the timber must have been weak originally, or become weakened from some unexplained cause, and that from want of proper supervision the defect had never been discovered. An effort was made to bring home the want of proper supervision to one Wagner, who was said to be charged with the duty, and who, though he had casually examined the timbers sometimes, had never applied some of the most simple and usual tests, such as striking with a hammer, and piercing with a sharp instrument. Wagner was what was called a timberman in the mine: the timbermen put in and looked after such bridges or passages, and Wagner was sometimes called captain, as he had some authority over other timbermen, and might direct them as to their work. He, however, as well as the others, was under the general supervision and control of Capt. Cliff who had the entire charge of the underground work. No claim was made that either Cliff or Wagner was incompetent, or that the company had been negligent in the employment of incompetent persons, and the principal reliance of the

although the same were unsound and of insufficient strength for said employees to pass over with safety.

And the said plaintiff avers that heretofore, to wit: on the day and year first aforesaid, he was an employee of said defendant, and was hired by said defendant to labor for it in said mine, in and about the working thereof, and that while he was carefully and prudently passing along said "drift" or "level" and over said bridge, in obedience to the orders and requirements of said defendant, and in the course of his said employment, ignorant of the unsafe condition of said bridge, and of the danger to wit: on the day aforesaid, one of the [planks of said bridge, upon which he was necessarily walking, being weak and decayed as aforesaid, gave way and broke, and by reason thereof, and by reason of the negligence, carelessness and misconduct of the defendant as aforesaid; the plaintiff, without fault or negligence on his part, fell down said excavation, to a great depth, to wit: to the depth of one hundred feet, upon the rocks at the bottom thereof, and was greatly wounded and injured by said fall, in the thigh, leg, side and head, and thereby became and was sick, disordered and sore for a long space of time, to wit: hitherto, during all which time he has suffered great pain, and has been put to great expense for medical attendance, care and nursing, to wit: the sum of one thousand dollars; and by reason thereof, he has become permanently disabled and crippled in his left leg, and is entirely deprived of the use thereof, and to the damage of the said plaintiff of twenty thousand dollars, and thereupon he brings suit, etc.

BALL & OWEN,
*Attorneys for Plaintiff.*

plaintiff seemed to be on such inferences of negligence on the part of Wagner as might be drawn from the evidence.

The circuit judge was requested to instruct the jury that even if they found that Wagner was negligent, yet his negligence was the negligence of a fellow servant of the plaintiff, and of this the plaintiff took the risk. This was refused on the ground, as would seem, that in respect to the supervision of this bridge or passage way Wagner was charged with the responsibility of the company, and his neglect was the neglect of his principal. As between the company and any third person, the extent of the authority or responsibility of Wagner would have been immaterial: but when a servant demands from his master compensation for an injury received in his service, it is necessary that he trace some distinct fault to the master himself. The mere fact of such injury is no evidence of such fault; neither is the mere fact that it resulted from the carelessness of some other person in the same employment. The servant assumes all the usual risks of his employment, and among these is the risk that fellow-servants will sometimes be careless and that injuries will result. All that can be required of the master in that regard is that his servants shall be prudently chosen, and that they shall not be retained in his service after unfitness or negligence has been discovered and has been communicated to him. This duty of due care in the employment and retention of competent servants is one the master cannot relieve himself of by any delegation, and if it becomes necessary to entrust its performance to a general manager, foreman or superintendent, such officer, whatever he may be called, must stand in the place of his principal, and the latter must assume the risks of his negligence. The same is true of the general supervision of his business: if there is negligence in this, the master is responsible for it, whether the supervision be by the master in person or by some manager, superintendent or foreman to

whom he delegates it. In other words, while the servant assumes the risk of the negligence of fellow-servants, he does not assume the risk of negligence in the master himself, or in any one to whom the ·master may see fit to entrust his superintending authority. *Albro v. Agawam Canal Co.*, 6 Cush., 75; *McAndrews v. Burns*, 39 N. J., 117; *Malone v. Hathaway*, 64 N. Y., 9; *Hard v. Vermont etc. R. R. Co.*, 32 Vt., 473.

But Wagner did not stand in respect to this company in any such position. He was no superintendent or manager; he was nothing but a fellow-servant of the plaintiff. The duties of the two were different, it is true, but so commonly must the duties of fellow-servants be. He had one thing to do and the plaintiff another, but neither stood in the master's place in respect to the other; and if it be true, as the plaintiff claimed, that Wagner had special authority and was charged with special duty in respect to the particular passage way, this cannot vary the legal aspects of the case. In any such business there must be division of employments among servants: one looks after one thing and another after another: but this each understands when he enters the service: he knows that his fellow-servants are to be charged with duties and responsibilities of differing natures and differing grades, and he also knows that one of the necessary risks of the employment is that any one of them may be negligent and cause him injury. This risk he assumes. It is immaterial that the negligent servant was in a position of greater responsibility. than himself, or in a different line of employment, so long as both were in the same general business, so that the negligence of the one might contribute to the danger of the other. *Lehigh Valley Coal Co. v. Jones*, 86 Penn. St., 432; *McAndrews v. Burns*, 39 N. J., 117.

If therefore it had appeared that Wagner was negligent, as the plaintiff claimed, the action must nevertheless have failed. But we look in vain in the record for any evidence that Wagner was negligent. It may be

guessed or surmised that there was negligence some-where, and one juror may guess that it was in the want of careful selection of timber; another, that it was in the want of subsequent inspection, or in the want of care to prevent rocks falling on the bridge; but the case affords no safe ground for any thing beyond conjecture; and if the master can be held liable under the circumstances which the record discloses, on mere guesses or inferences respecting the existence of fault, somewhere, the rule that an employee assumes the ordinary risks of his employment will be wholly done away with. It is too late at this day to enter upon any discussion or defense of that rule: it has been too often enforced in this State and is too salutary in its effects upon the care and diligence of those engaged in employments where these qualities are especially requisite, to be now disturbed or questioned. *Davis v. Detroit etc. R. R. Co.*, 20 Mich., 105; *Wonder v. Baltimore etc. R. R. Co.*, 32 Md., 417.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.