## CARL SCHROEDER v. THE FLINT & PERE MARQUETTE RAILROAD COMPANY AND THE CHICAGO & GRAND TRUNK RAILWAY COMPANY.

*Railroad companies—Negligence—Fellow-servants.*

One of a gang of men at work for a railroad company under the charge of a foreman, unloading and leveling dirt hauled upon its premises by another railroad company, was injured by the backing of the engine against the loaded cars, from which it had been detached. The foreman kept the time of the men, counted the number of cars, directed the men where and how to work, saw that they did their work properly, directed the place where the train should stop for unloading, notified the men when to cease leveling and commence unloading, and then assisted in doing the work. He was under the immediate and direct control of the division road master, from whom he received instructions to keep the time and number of cars, and directions in relation to the work. In a suit against the company by the injured employé to recover for the injury sustained, the sole act of negligence alleged as ground for recovery was that the foreman failed to give notice to the men under his charge that the train was about to move. And it is held that the foreman and the plaintiff were fellow-servants.

| | |
|---|---|
| 103 | 213 |
| 106 | 468 |
| 106 | 470 |
| 106 | 613 |
| 103 | 213 |
| 107 | 605 |
| 108 | 290 |
| 103 | 213 |
| 113 | 157 |
| 103 | 213 |
| 114 | 63 |
| 103 | 213 |
| 117 | 563 |
| 103 | 213 |
| 120 | 628 |
| 103 | 213 |
| 128 | 10 |
| 128 | 526 |
| 103 | 213 |
| s61NW | 663 |
| s61NW | 666 |
| s50ASR | 354 |
| 129 | 82 |
| 129 | 85 |
| 103 | 213 |
| s61NW | 663 |
| s50ASR | 354 |
| e133 | 198 |
| 103 | 213 |
| 143 | 691 |
| 103 | 213 |
| f151 | 560 |

Error to St. Clair. (Vance, J.) Argued April 27, 1894. Decided December 22, 1894.

Negligence case. Defendant Flint & Pere Marquette Railroad Company brings error. Reversed, and no new trial ordered. The facts are stated in the opinions.

*Hanchett, Stark & Hanchett,* for appellant.

*Northup & O'Donnell* and *James A. Muir,* for plaintiff.

GRANT, J.    The liability of the defendant the Flint & Pere Marquette Railroad Company, under the instructions of the court, depends upon the position occupied by Mehalski, the boss or foreman of the gang of 10 men who were occupied in unloading and leveling the dirt hauled upon its premises by the defendant the Chicago & Grand Trunk Railway Company.    The sole negligence alleged as ground for recovery against the Flint & Pere Marquette road is that Mehalski failed to give notice to his co-employés that the train was about to move.    Before discussing this question, I desire to state that, in my judgment, this accident could not possibly have happened, without the negligence of the plaintiff himself, if the trainmen of the Chicago & Grand Trunk road had performed their duty.    It was established beyond controversy, by the testimony of witnesses and by the rules of the company, that it was the duty of the trainmen to give warning of the moving of the train, and to see that both the "track and the train were clear," and that it was the duty of the rear brakeman to be in his place on the rear car when the train moved.    The case against the Grand Trunk Company was withdrawn by the plaintiff before it was submitted to the jury, and he was permitted to recover on the ground of the negligence of the Flint & Pere Marquette Company.

If Mehalski was not the defendant's *alter ego,* then it is not liable.    He occupied the usual position of boss or foreman of a gang of men.    His duties were no other, or different, or greater than those of the foreman of the ordinary section gang upon a railroad.    In all such cases some one of the men employed must be invested with authority to direct the work.    He kept the time, counted the number of cars, directed the men where and how to work,

saw that they did their work properly, directed the place where the train should stop for unloading, notified the men when to cease leveling and go to unloading, and then assisted in doing the work. He was under the immediate and direct control of Mr. Cole, a higher official of the defendant, who was often present, sometimes daily, superintending and directing the work. I do not think there was any legitimate evidence tending to show that he was invested with authority to hire and discharge men. He certainly had not done it before the accident, and was not given express authority until long afterwards. But whether he did or did not have such authority I consider of little consequence. The power to hire and discharge is not conclusive, and is in many cases of little moment. Too much prominence has often been given to this authority. One may possess it and still not be the *alter ego*, or he may not possess it and still be the *alter ego*.

The doctrine of non-liability for the negligence of a fellow-servant is so firmly established, and has been so frequently affirmed, in this State, that I deem it unnecessary to cite the authorities. The difficulty has always been in determining whether the servant whose negligence caused the injury was, under the facts of each case, the *alter ego* or a fellow-servant. The perplexity and difficulty of the question have been recognized in the decisions of this Court, and it is quite possible that there may be some difficulty in harmonizing them all; but the rule recognized in nearly if not all of them is thus stated by McKinney on Fellow-Servants (section 23):

"The true test, it is believed, whether an employé occupies the position of a fellow-servant to another employé, or is the representative of the master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant, by which another employé is injured; or, in other words,

*whether the person whose status is in question is charged
with the performance of a duty which properly belongs to
the master."*

This principle is so exhaustively and carefully discussed
by my Brother HOOKER in *Beesley v. F. W. Wheeler &
Co., ante,* 196, that further discussion here is unnecessary.
The authorities are there cited and commented on. I con-
cur in his reasoning and the conclusions reached.

One of the principal cases relied upon by the plaintiff
is *Harrison v. Railroad Co.,* 79 Mich. 409. In that case
my Brother LONG, speaking for the Court, expressly
recognized this rule in the following language:

"It is not to be determined solely from the grade or
rank of the offending or injured servant, but it is to be
determined by the character of the act being performed
by the offending servant. If it is an act that the law
imposes the duty upon the part of the master to perform,
then the offending employé is not a fellow-servant, but a
superior or agent, for whose acts the master is held liable.
- "Again, if the master has delegated to a servant or
employé the care and management of the entire business,
or a distinct department of it, the situation being such
that the superior servant is charged with the performance
of duties towards the inferior servant which the law im-
poses upon the master, then such superior servant stands
in the place of the master, and the rule of *respondeat
superior* applies."

To hold Mehalski the *alter ego* would result, in my
judgment, in the virtual abrogation of the rule. It would
establish the doctrine that where a farmer employs a com-
petent ditcher to construct a drain upon his farm, or a
foreman to harvest his crops, or a carpenter to build him
a barn or other building, he is responsible for their neg-
ligent acts, notwithstanding that he has employed com-
petent men and furnished proper tools, material, and
machinery; and that every foreman in a manufacturing
plant, and every boss of a railroad gang, is a vice-prin-
cipal. It would result in overruling the following cases:

*Quincy Mining Co. v. Kitts,* 42 Mich. 34; *Hoar v. Merritt,* 62 Id. 386; *Peterson v. Railway Co.,* 67 Id. 102; *Adams v. Iron Cliffs Co.,* 78 Id. 271; and the many other cases in which this rule has been recognized and affirmed.

Plaintiff relies upon the following authorities to support his right of recovery: *Harrison v. Railroad Co., supra; Ryan v. Bagaley,* 50 Mich. 179; *Erickson v. Railway Co.,* 83 Id. 281, 93 Id. 414; *Shumway v. Manufacturing Co.,* 98 Id. 411; *Hunn v. Railroad Co.,* 78 Id. 513.

In *Harrison v. Railroad Co.,* which, as already shown, approves the rule as above stated, a division superintendent, who had the entire charge and control of a division of the road 150 miles in length, was held to be the *alter ego.*

In *Ryan v. Bagaley,* the defendant, the owner of the mine, lived in another state, and the entire management, control, and conduct of the mine in its operation was delegated to the mining captain. That case was tried before the writer of this opinion as the circuit judge, and the charge to the jury upon this point was as follows:

" It appears from the testimony that he had the entire charge and control of the underground work, and all the work generally, of the mine, and that he employed and discharged men. Now, I charge you that Captain Whitesides, if he had this power delegated to him to manage and control the mine, negligence on his part would be the negligence of the owners or managers of the mine. So, if he directed the hoisting of this , pipe, and the act alone of hoisting it was negligence, then the owners of the mine would be liable. If he did not direct how it should be done, but simply instructed Mr. Tyler to hoist the pipe, and Tyler, in his trying it, did. it negligently and carelessly, that would not be the act of the defendants or Mr. Whitesides."

In *Shumway v. Manufacturing Co.* it was conceded by the defendant that the relations of the agent to the defendant were such that he might in law, for some pur-

poses, be regarded as the representative of the master, but it was insisted that in the particular act of starting the machine he was acting as a fellow-servant. The officer of the defendant had the entire charge of the factory, as well as the employment and discharge of men. This was evidently a case of the delegation of the entire control to the agent, who was held to be a vice-principal.

In *Erickson v. Railway Co.*, stress was laid upon the fact that the foreman, Moleski, who had full charge of the gravel train, and complete control over employés working under him, with full power to hire all laborers and to discharge them, and to whom alone complaint could be made, *placed the plaintiff in a position of danger to which he was not accustomed, and for which he was not hired*. Both the opinions in that case were also written by Mr. Justice LONG, and the superior servant was held to be the *alter ego* under peculiar facts which showed an extensive authority conferred by the principal upon its servant. I assented to that opinion without any thought of abrogating or infringing upon the above rule so firmly established by a long line of decisions in this and other courts, and so well grounded in reason.

In *Hunn v. Railroad Co.* the train dispatcher had absolute control over the running and operating of trains from Rives Junction to Mackinaw. This case also recognizes the general rule above stated, and the difficulty inherent in determining whether the facts of any case bring it within the rule.

Whatever criticisms may be made upon the soundness of these decisions, it cannot be said that the Court intended to abrogate the rule of non-liability for the negligence of a fellow-servant in every case of superior authority, nor that they apply to or govern the facts of the case at bar. This rule is well settled, and in every case the question must be, do the facts shown by the plaintiff bring his case

within the rule? See *Peschel v. Railway Co.*, 62 Wis. 349.

I am of the opinion, therefore, that the judgment should be reversed, and no new trial ordered. Ordered accordingly.

LONG and HOOKER, JJ., concurred with GRANT, J.

MONTGOMERY, J. The plaintiff sues to recover for negligent injury. The defendant railroad company employed the Chicago & Grand Trunk Railway Company to deliver, upon its yard at Port Huron, dirt taken from the tunnel which the Chicago & Grand Trunk road was excavating for, which dirt was to be used by defendant in leveling its own yard. The defendant had nothing to do with the train except to indicate to the conductor of the train where to place the cars for unloading. The plaintiff was engaged with a gang of men in the work of unloading the cars as they were placed in the yard. The gang of men was under the immediate charge of one Mehalski as foreman. Mehalski's authority consisted of directing the manner of unloading, and he also had authority, when given direction by his superior, Mr. Cole, to hire and discharge men. The testimony shows that Mr. Cole was the division road master of the defendant road, and he had general charge and direction of the work of filling the yard. He gave instructions to Mehalski to keep the time and number of cars, and he gave directions in relation to the work. Mehalski, before increasing his force of men, consulted and obtained the consent of Mr. Cole. With this consent, he had authority to keep up the number of the force by hiring men to take the place of those who left. While he did not exercise the power of discharging men at any time prior to the injury to plaintiff, he testifies that he supposed that he had the power to discharge men if they were not doing the work satisfactorily. He

testifies that he was under Mr. Cole's direction and charge; that Mr. Cole was there on the spot, sometimes twice a day, and sometimes only twice a week.

" If he [Cole] saw the work was being done as he wanted, he would say, ' All right.' If it was something that did not satisfy him, he gave me instructions."

The injury was caused, as is claimed by the plaintiff, in the following manner:   In the conduct of the business, when the men were leveling dirt in the yard, the signal for them to leave the work, and go at once to the cars and commence the work of unloading, was a call from Mehalski in the words, " Come on, boys." When the train was placed, the engine would be uncoupled and moved away. This custom was known to all the men. They came to unload whenever Mehalski called them, and not before.   When he saw the train coming, he went on, and placed it where he wanted it to be unloaded, and then called the men.   On the day in question, after the train which caused plaintiff's injury came into the yard, Mehalski, following the usual custom, called to the men by hallooing, " Come on, boys," and waved his hands. The men had previously been assigned in pairs to the cars on the train.   Each knew his own car.   The plaintiff was at work on the car furthest from the engine,—the fifth car.   The men had been working to the south of the train.   The engine was on the north end of the train, and plaintiff's car would therefore be the first one reached by the laborers.   Each of the men carried a pail of water, in which he dipped his shovel when the wet clay, which was very sticky, adhered to it.   The train came.   The conductor, under the order of Mehalski, placed it.   In coming to the train from the south, plaintiff, who was assigned to the last car, went to the west side, that he might fill his pail with water from the pond.   He got his water, and put it upon the car.   At the time Mehalski hallooed and

motioned to the men, the cars had stopped. Plaintiff saw
the engine uncoupled and standing at a distance. When
he got to the car, it stood about 30 feet away. It was
there when he went for the water. It was standing in the
same place when he started to climb up. It appears that
Mehalski had been notified that the train was blocking the
yard engine of the Flint & Pere Marquette Railroad on
another track, and was requested to have the mud train
moved. Mehalski was then at the south end of the train,
and, in answer to the request to move the train, he went
up to the engine. As Mehalski went to the north end of
the train to instruct the conductor to pull it ahead, the
men were coming up to unload the train. The engine
backed down and against the train, and the plaintiff
received the injuries complained of. No warning was
given by Mehalski. The plaintiff recovered, and the de-
fendant brings the case to this Court.

1. The most important question arises upon the instruc-
tion of the court upon the subject of whether the plaintiff
and Mehalski were fellow-servants. Upon that question
the circuit judge instructed the jury as follows:

"If you find from all the evidence in the case that
Jacob Mehalski had full power to hire and discharge men
that were engaged in unloading this car, and that he had
full control over these men in directing and managing
their work in and about the entire business for which they
were employed,—that is, in receiving the train into the
yard and placing the train, the unloading of the dirt and
the leveling of it down, and the general direction of the
work,—then I instruct you, as a matter of law, that Jacob
Mehalski was not a fellow-servant of the plaintiff."

It has been found difficult to lay down general rules
for determining whether one who has some direction of a
branch of business of the principal is to be deemed his
representative or a fellow-servant, and much confusion has
arisen from a misapplication of well-understood rules; and

it may be said, also, that the confusion has most often arisen in determining the question with reference to the rank of the offending servant. In general, we think the true test is whether the person alleged to be a representative of the master is engaged in the performance of an act which it is the duty of the master to perform for the protection of his employés,—such a duty as that of providing a safe place to work, and safe machinery and appliances; exercising due care in the selection of servants engaged in the same employment; giving proper direction as to use of dangerous machinery by inexperienced employés; and the establishment of proper rules and regulations for the conduct of the business. Where there has been neglect of any of these duties, whether the neglect is the personal neglect of the master or that of one intrusted by him with the performance of the duty, such neglect is attributable to the master; and this is generally true, without reference to the rank of the offending servant.

In *Fox v. Iron Co.*, 89 Mich. 387, the rule as stated by Chief Justice Church in *Flike v. Railroad Co.*, 53 N. Y. 549, is cited with approval. The rule as cited is as follows:

"The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care, in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter   *   *   *   is liable for the manner in which they are performed."

See, also, *Crispin v. Babbitt,* 81 N. Y. 516; *Van Dusen v. Letellier,* 78 Mich. 492; *Morton v. Railroad Co.,* 81 Id. 423; *Roux v. Lumber Co.,* 85 Id. 519; *Irvine v. Railroad Co.,* 89 Id. 416; *Dewey v. Railway Co.,* 97 Id. 329.

In some jurisdictions, this is the limit of the liability of the master in all cases; and it is held that an employé

or servant may occupy a dual position,—that he may represent the master and stand in his place as to certain acts, and in other acts be simply a fellow-servant. See McKin. Fel. Serv. § 42. And, within certain limits, this rule has been applied in this State. See *Hunn v. Railroad Co.*, 78 Mich. 513; *Fox v. Iron Co.*, 89 Id. 387. But it has also been held by this Court that where the master places the entire charge of the business in the hands of an agent, exercising no authority therein, he may be liable for the negligence of such agent to a subordinate employé. This rule is recognized in *Harrison v. Railroad Co.*, 79 Mich. 409; *Ryan v. Bagaley*, 50 Id. 179; *Erickson v. Railway Co.*, 83 Id. 281; and *Shumway v. Manufacturing Co.*, 98 Id. 411. See, also, Bailey, Mast. Liab. 270; Cooley, Torts, 562; *Sell v. Lumber Co.*, 70 Mich. 479; *Erickson v. Railway Co.*, 93 Id. 414; *Lyttle v. Railway Co.*, 84 Id. 289.

It remains to be considered, then, whether the negligence of Mehalski in the present case was the neglect of a duty which the master owed to the servant, and could not delegate to a fellow-servant; and, if this be answered in the negative, whether, within the rule established in this State, the entire management of the business, or a particular branch thereof, had been delegated to Mehalski in such sense as to make him the *alter ego* or vice-principal of the defendant. We think it very clear that the act which Mehalski was performing was not one which the master owed the duty of performing in such sense that he could not delegate it to a fellow-servant of the plaintiff. The act which he performed or neglected—that of giving notice of the intention to move the engine—was such a one as might be, and generally is, intrusted to subordinates, and related to the mere operation of the business in its details. There was no defect in machinery. There was no negligence in the employment of servants. The injury did not result from the failure to properly instruct an in-

experienced servant, nor did the injury result from a want of general rules for the management and conduct of the business. It was plainly, therefore, the neglect of a fellow-servant, unless it can be said that Mehalski was the vice-principal or *alter ego* of the defendant. If the superior servant has complete control of the business of the master, or a disconnected branch thereof, the master is liable for the negligence of the superior servant,—in that case called the "vice-principal;" and this, without regard to whether the negligence is a failure to perform a duty which, upon other grounds, the law casts upon the master. This liability is apparently based upon the ground that the risk of personal negligence of one standing in such relation to the master that he can be called the master's other self is not undertaken by the servant. See cases above cited. Mere superiority in grade does not constitute a foreman the vice-principal, unless his authority is exclusive in his department. Did Mehalski occupy that relation to the defendant's business?

In the case of *Harrison v. Railroad Co.*, Light, an assistant road-master, was held to be the vice-principal, on the ground that the entire charge of a distinct branch of the business was, for the time being, in his hands as agent, the master exercising no discretion and no oversight. It was said:

"He in fact controlled that entire division absolutely, so far as employing and discharging the men was concerned.     *     *     *     Doyle [his superior] was not present at the time of the injury, and the fair inference is that whatever power Doyle would have had, if present, Light had like power, and represented the defendant company as fully as Doyle would have done. He did no manual labor himself, but had the full oversight, care, and management of it."

In *Hunn v. Railroad Co.*, it was said:

"The master may not choose to give his personal atten-

tion to his business, and may desire to put another in his place, to manage and control it for him as fully as he might do if personally present. Such person is his *alter ego,* and the master is as responsible for his acts of omission and commission, while engaged in the business intrusted to him, as if he did such acts himself.   *   *   *   Whenever the business conducted by the person selected by the master is such that the person selected is invested with full control (subject to no one's supervision except the master's) over the action of the employés engaged in carrying on a particular branch of the master's business, and, acting upon his own discretion, according to general instructions laid down for his guidance, it is his province to direct, and the duty of the employés to obey, then he stands in the place of the master, and is not a fellowservant with those whom he controls."

See, also, *Lyttle v. Railway Co.,* 84 Mich. 295.

In the present case, while Mehalski was acting under the general instructions of Cole, the jury have found that he (Mehalski) had full control of the men employed, and directed and managed their work in and about the entire business in which they were engaged, with full power to hire and discharge men engaged in the work. If the facts were so, the plaintiff and Mehalski were not fellow-servants. The fact that Mehalski was subject to general directions by another cannot be held conclusive. For the time being, every power and all authority which the master could exercise were vested in Mehalski, including the power of enforcing his authority by a discharge of the men employed. We think, within the rule established in this State, the instructions of the circuit judge, if supported by the evidence, must be upheld.

But it is said that there was no evidence that Mehalski had the power to discharge men. On cross-examination Mehalski testified:

"It was my duty to see that the men did their work properly. If they did not, I would discharge them."

On redirect he testified:

"Mr. Cole had given me authority to discharge men. He said, if men were no good, to discharge them. That was about two months after we commenced work there."

As this date was later than the date of the injury to plaintiff, it is contended that there was no authority at the time of the injury. But the witness further testified on redirect:

"I had talked with him many times before that about discharging men, and was acting under his direction about that."

On recross-examination he testified:

"If any left, I had authority to hire men in their places, but would not have authority to take any greater number than ten without getting authority from Mr. Cole. He told me, if they would not work, to let them go. I considered I had a right to discharge a man if he was not doing good work."

We are satisfied that it was properly left to the jury to say whether, at the time of the injury to the plaintiff, Mehalski had authority to hire and discharge men.

2. There was testimony from which the jury would be justified in inferring that the plaintiff attempted to get upon the car after it was in·motion. While the testimony upon this point was meager, yet it was such that the jury might have been justified in acting upon it. One Reynolds, a witness for defendant, testified:

"Van Patten gave the signal to back up and couple on, and pull the train ahead. There was no jerking of the train. Just as they started, I saw plaintiff step between the cars. He put his pick and shovel and pail onto the car, and then put his hands, one on each car, and tried to step on the brake beam. There would not be much slack in the train that a person would notice, because they started so slow. I watched the man, and the next I saw of him his foot was run over. I did not see him when he fell."

In view of this testimony, defendant asked an instruction as follows:

"In order to recover, the plaintiff was required by law to exercise care to avoid getting upon the cars, or to attempt to get upon the cars, while they were being moved, or while they were likely to be moved, so as to endanger his safety in getting upon them; and if, by his own want of care, he contributed to receiving the injury of which he complains, he cannot recover against the defendant."

We think this instruction should have been given. It was peculiarly proper in this case, for the reason that the injury is alleged to have occurred through a failure to notify the plaintiff of the fact that the train was about to move. If, then, the plaintiff's attempt to get aboard the car was made after the train was in motion, it cannot be said that the neglect of the duty to notify him that the train was about to move was the proximate cause of the injury. Nor are we able to say that the charge of the circuit judge, given on his own motion, cured the error. It is true, the court laid down correctly the general rule that the plaintiff must show that he in no way contributed to the injury complained of; but the instructions did not touch the precise point covered by the request to charge, and the defendant was entitled to an instruction upon this specific point. *Wildey v Crane,* 69 Mich. 17; *Miller v. Miller,* 97 Id. 151; *Babbitt v. Bumpus,* 73 Id. 331.

3. The circuit judge further charged the jury that if they should find that Mehalski, after he had given the order to the men to come on and get upon the cars, and while the plaintiff was about to climb upon the cars, ordered the engine coupled onto the train to move it, and did not warn the plaintiff, or notify him in some way, that the train was about to be moved, and the engine was backed down and coupled onto the train and moved in obedience to the orders of Mehalski, and in the moving of

the train the plaintiff was thrown down and run over, and received the injuries complained of, and if the jury should find that the proximate cause of the injury was the failure of Mehalski to notify the plaintiff that the train was about to be moved, then the plaintiff would be entitled to recover. This instruction implies that the failure of Mehalski to notify plaintiff of the intended movement of the train was negligence as matter of law. While it was clearly a fact from which the jury might have inferred negligence, yet we think it should have been left to the jury to determine whether, in view of the custom of giving notice by Mehalski, and the custom of ringing a bell and blowing a whistle by those in charge of the train, the failure of Mehalski to give notice on the occasion in question was or was not negligence.

There are no other questions presented which would be likely to arise upon another trial.

The judgment should be reversed, with costs, and a new trial ordered.

McGRATH, C. J., concurred with MONTGOMERY, J.