# JUNE TERM, 1901.*

---

## WELLIHAN v. NATIONAL WHEEL CO.

1. INJURY TO EMPLOYÉ—NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY—FELLOW-SERVANTS.

Plaintiff was employed in defendant's factory to operate a spoke lathe, and while in a narrow space, oiling it, the foreman, knowing plaintiff's position, without warning, set the machine in operation, which startled plaintiff, and, in his attempt to escape from his dangerous position, he stumbled, and his arm was thrown into the knives. *Held:*

(1) That the question of whether the foreman's negligence was the proximate cause of the injury was properly submitted to the jury.

(2) That, if the purpose of the foreman in starting the machine was to see whether it did the work properly, rather than to ascertain whether it was safe for the use of the operator, his act was that of a fellow-servant, and plaintiff could not recover.

2. FELLOW-SERVANTS—WHO ARE.

The question of fellow-servant is to be determined from the employment, and not from the grade of the offending servant. If both employés are engaged in the same common enterprise, though in different grades, they are fellow-servants.

| | |
|---|---|
| 128 | 1 |
| s87NW | 75 |
| 129 | 2 85 |
| 128 | 1 |
| s136 | 233 |
| 128 | 1 |
| 142 | 2 19 |
| 128 | 1 |
| f150 | 1443 |
| 128 | 1 |
| 151 | 1214 |
| 151 | 1560 |

Error to Jackson; Peck, J. Submitted February 1, 1901. Decided July 19, 1901.

Case by Michael Wellihan against the National Wheel Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Wilson & Cobb*, for appellant.

*Richard Price* (*Charles A. Blair*, of counsel), for appellee.

---

Long, J. This action is brought to recover for the loss of an arm through the alleged negligence of the defendant. The injury occurred January 7, 1898, in a spoke lathe operated in defendant's shop in the city of Jackson. The plaintiff had commenced work on the lathe the day before the accident. He was a man about 38 years of age, and had been for many years employed in the capacity of fireman and engineer in the railway service prior to the time of entering into the employment of defendant, on January 6, 1898. The machine or spoke lathe was operated by power in defendant's shop. Knives are attached to a cutter head mounted on a carriage, which travels from right to left when forming a spoke. When the knife head is at the right, the timber is placed in position. The machinery is then placed in gear by means of a clutch, which sets in motion the screw shaft, and the cutter head travels to the left, forming a spoke. After the spoke is formed, the motion of the feed shaft is, by an automatic adjustment, reversed, and the head travels to the right. The knives revolve continuously while the head is reversing and when at rest. The spoke being formed is about breast high to the operator, who stands in front and to the right of the lathe while operating it. Back of the machine, and two feet four inches distant therefrom, is a channel eight or nine inches deep, about twenty inches wide, into which the greater part of the shavings fall, and are carried away by a moving belt.

The declaration alleges, substantially, that the plaintiff was employed January 6, 1898, by one Edmonds, defendant's foreman, to operate the machine, who instructed him in its use, operation, and management; that previous to such employment he had had no experience in the use of this or similar machinery; that it was his duty to oil the machine, and in doing so it was necessary to go behind it; that on the day he was injured it became necessary for him to oil the machine; that, before doing so, he threw the machine out of gear, leaving the head at the east end of the lathe, and, with his oil can in his right hand, passed

around behind the machine; that there was a pile of spokes or wheels near the west end of the machine, leaving but a narrow space for him to pass in; that he had passed through this space, and had taken a position at the rear and west of the machine, and was stooping over to oil the machine, when Edmonds, the foreman, threw the machine into gear, and started to run out a spoke which had been placed therein; that this set the cutter head in motion, and fine shavings and dust were thrown back in his direction, making it difficult to see, and also making it dangerous to pass to the west, because of the gear at the west end being set in motion; that, as he raised up, the machinery was all in motion, and shavings flying about him; that he had not completed oiling the machinery, and to do so would have to pass to the east in the rear of the lathe, and towards the approaching knives; that, as he raised up, he had only taken one step, and did not have time to consider whether he ought to pass to the east end, as aforesaid, when he stubbed his foot against some object on the floor, and fell forward; that, to save himself from falling, he involuntarily threw out his right arm, when the knives came in contact with it, and cut it off; that it would have been safe to have passed around the lathe, had it been left alone; that it was defendant's duty to furnish him a safe place to work in; that the starting of the machinery made his position exceedingly and unnecessarily dangerous, because the place was narrow and crowded, and the shavings filled the air and confused him; that the knives passed over and along the entire length of the lathe; that he had a right to assume that the machine would not be interfered with while he was oiling the same, and he unnecessarily put in a place of great danger. It is also averred that the plaintiff was acting with due care in what he was doing.

On the trial plaintiff had verdict and judgment for $4,000. Defendant brings error.

1. It is contended by defendant that there was no proof of negligence on its part. The plaintiff testified:

"I was stooped over. Had the oil can tipped bottom side up, oiling the machine, when that clutch—whatever you call it—came together. Edmonds' starting the machine caused it to come together. I did not see him when he started it, but he must have been at the southeast corner—that is where the lever is—to start it. He was there when I raised up. When I went to oil the machine, I had the oil can in my hand. I met Edmonds near the southwest corner of the lathe. He must have seen me go in with the oil can in my hand. I spoke to him. He said nothing to indicate that he was going to start the machine. I had no knowledge or expectation that he was going to start it. After he started the machine, I straightened up, and kind of squared around, faced to the east, took a step, and struck my toe, and fell. I did not go to the floor; just stumbled. * * * The first thing I knew, I felt a little pain in my fingers, and, when straightened up, jerked myself out, and my arm was gone just above the elbow. * * * When the machine was started, the knives were coming towards me. That was all the way they could revolve. * * * Edmonds was foreman of the shop; had charge of the machines and men around them."

We think it must be held that there was sufficient proof to go to the jury on the question of defendant's negligence, and that subject was properly submitted, unless Edmonds and plaintiff were fellow-servants.

2. It is contended by defendant's counsel that plaintiff was guilty of contributory negligence. We think that question need not be discussed, as it was fully and fairly submitted for the determination of the jury by the court below.

3. It is contended that the negligence complained of was not the proximate cause of the injury. We think the court very properly left that question to the jury, and that there was sufficient evidence to warrant the jury in finding that the starting of the machine by Edmonds was the proximate cause of the injury. The sudden and wholly unexpected starting of the machine, with the knives rapidly revolving where the plaintiff stood, seems to have startled him so that, in his attempt to retreat from the

peril of his position, he stumbled and fell upon the knives. Edmonds himself regarded the position of the plaintiff as a dangerous one; and it seems to us that any prudent man might have expected some injury to result from the starting of the machine when the plaintiff was in the position he was.

4. It is also claimed that Edmonds was a fellow-servant of plaintiff, and therefore no recovery could be had. The court charged the jury upon that question as follows:

"Another very important element in the case, and one to which much proof and considerable argument has been made, is the question of fellow-servant; that is, whether, at the time of this accident, the plaintiff and Mr. Edmonds, the defendant's foreman, who started the machine, were what is known in law as 'fellow-servants.' Without running the risk of confusing you by fuller statements as to the meaning of this expression under the circumstances, I give you now explicit instructions as to your duty in determining the question in this particular case. If the plaintiff was injured and lost his arm by the negligence of Edmonds, the defendant company would not be responsible for that unfortunate consequence, provided Edmonds and the plaintiff were fellow-servants; and in such a situation the plaintiff would be compelled, if he wanted to enforce any action for such loss or injury, to bring his suit against Edmonds, and not against the company. Now, in this case I instruct you that Edmonds was a fellow-servant of the plaintiff, unless you find from the evidence, and a preponderance thereof, that at the time he started this machine he was engaged in the work of inspecting or testing the machine for the purpose of seeing whether it was a safe machine for operatives to work with. If he started the machine to run through that spoke for any other purpose than that, he was a fellow-servant of the plaintiff, and the plaintiff cannot recover. I repeat this, gentlemen, to avoid misunderstanding about it: Unless you find from the evidence, and a preponderance thereof, that when Edmonds did the act of starting that machine, to run out that spoke, he was doing it for the purpose of determining whether the machine was a safe machine for operatives to use and to be used in that factory, he was a fellow-servant of the plaintiff, and the plaintiff cannot recover. If he had any other object in it, then it was an

object which would have made him a fellow-servant with the plaintiff. * * * You should examine all the evidence upon that subject. The plaintiff has testified that he did not see him when he started out. Of course, he cannot testify what was in the mind of Edmonds. Edmonds has testified that his object was, his purpose was, to run through a spoke to see that it came out right, —that it was making proper spokes. Now, gentlemen, it is true that the testimony of Edmonds as to what his purpose was is not conclusive upon you; but you should give it fair consideration,—give it such weight as you think it fairly entitled to; and you should consider, in connection with it, all the surrounding circumstances which tend to throw light upon the question as to what he was doing there when he started that machine and ran out that spoke,—whether he was doing it to carry on the work of seeing that the machine was a safe machine for operatives to work or not. If he was doing it for the purpose of seeing whether the machine was safe, if it was a part of the work he was intrusted with by the defendant, to see that the machines were safe machines to be used by the operatives, then he was doing the master's work, and was not a fellow-servant with the plaintiff. If he was doing it for any other purpose that has been referred to in this trial,— as if he was doing it for what he says he was, to run the spoke through to see that the work came out right,—and if he was doing it in the general furtherance of the operative work of the factory, he was a fellow-servant of the plaintiff, and the plaintiff cannot recover."

The declaration alleges that Edmonds, in starting the machine, was acting as the representative and foreman of the defendant. It is the claim of counsel for defendant that there is not a particle of evidence in the case showing or tending to show that Edmonds, at the time of the accident, started the machine to see if it was safe to operate, and therefore in starting it he was not acting as a representative of the master; that Edmonds' negligence in starting it cannot be imputed to the defendant. On the other hand, counsel for plaintiff point out certain testimony, and refer to certain circumstances, which they contend justify the charge. They refer to the fact that a considerable part of Edmonds' time was devoted to the

supervision of the manufacture of spokes; that it was his duty to keep the machines in repair, and instruct the men how to operate them; that if a machine did not work properly, and was not turning out spokes just as Edmonds wanted them, he adjusted the machine so it would do that; that he set the machines to make different sized spokes, and left the men to run them after that; that he had adjusted this machine so that it would center the spokes, and run them through all right, and there was no reason for his examining it or running it for that purpose; but that he knew the feed did not work right, and there was reason for his examining and fixing it on that occasion.

We think the testimony does not bear out the assertion of counsel that Edmonds was fixing the machine on the occasion of the accident because the feed was not working right. The testimony referred to by counsel is set out in their brief as follows:

" Well, I had been bothered a little with it. It would go about half way,—about the center of the spoke,—and stop feeding. It would not feed. The knives would revolve, but it would not feed. So I tried three or four spokes that way, and had trouble every time to reach the west to hold the lever there, in order to have it feed; and I thought I would oil it, and try whether that would have any effect. *   *   *

"Q. He was there working at the machine, fixing it in some way, a few minutes before this happened?

"A. No, sir; not to my knowledge. He brought spokes that I supposed had been turned for a lumber wagon, to be made smaller. If he changed the machine, I have forgotten it. Think he ran through two or three. He would have to change the machine to turn larger spokes. He turned two or three spokes just or not long before this happened. He was not standing at the machine when I started to go to oil it. He came from the west end of the shop. I met him at the soutwest corner of the machine. Just came right from the other end of the shop somewhere. He did not put the spoke in that he turned out. I took that spoke out, and put one in, before I went after the oil can. I did not take out the spoke he put in. Don't know how long had been running it since he was there last; it was not very long; might have

been eight or nine minutes; was but a very short time. Had made no complaint about the machine stopping. He knew all about it better than I. Ran very well the first and second day. Took it all apart three or four different times. Had not seen Edmonds at this time since it began to stop. Had turned four or five spokes,—something like that. It bothered me. Had not seen Edmonds to make any complaint about that. * * * Oh, no; he did not bring the spokes there at that time. They had been brought there before, and I had been working on them. * * * Edmonds sawed off the clutch that was up on the corner; sawed it to square it up. This is not the clutch I was oiling. * * * Edmonds took the west end of the machine down two or three times—most all the machinery on the west end of the machine—the first day I was there. * * * He [Edmonds] goes around and looks at the work every little while, to see if the machine is doing the work right, and, if it is not, he remedies it. He had to watch the machine, too, that something don't get loose. If it did, he would have to fix it. If it got loose, it might be unsafe."

Edmonds testified:

" He came next morning, and went to work. Instructed him how to operate the machine, how to set the spokes, to oil, and all instructions there were to give. Operated the machine myself to show him. Spent six or seven hours the first day teaching him. He was turning spokes from the ordinary timber the day of the accident. I made a change just before it occurred, to turning club spokes,— re-turning them to smaller spokes. The size can be changed without changing the pattern—did not change the pattern—by adjusting the knives down to or farther from the spoke. After adjusting the machine, was there perhaps 10 minutes. Did not leave the machine until the accident. Do not, as a general thing, get the first spoke the right size; have to try three or four. I probably turned a half dozen. The plaintiff stepped back of me while I was operating the machine. I put in the spoke that was being turned when he was hurt. When I put that spoke in, the machine was working all right then.
" Q. When you say all right—
" A. The adjustments, the rests, were working all right. When the spoke was nearly through cutting the head, I first discovered that plaintiff was not behind me,

where had last seen him. Saw him at west end of machine, oiling clutch. As the vibrator dropped back, I looked down at brake at east end of machine. *   *   *

" I only had the top pulley, where the clutch is, off the first day the plaintiff was there.

" *Q.* And at that time did you take the clutch out ?

" *A.* Yes, sir; I had it off once in the forenoon, and cleaned it off. Perhaps later on I had it off, and took it out to the machine shop, and sawed it off or filed it up,— filed a shoulder on.

" *Q.* Why was that done ?

" *A.* In slipping, it had worn the corner off a little rounding. After I did that it worked better.

" *Q.* What effect had that being worn that made it necessary to file it off ?

" *A.* When we raised the vibrator, it did not set the screw going; that is, it would go a little bit, and then stop and catch. It would not feed properly. *   *   *

" When the vibrator dropped back, I looked down at the brake on the east end of the machine, and the next time I saw him he was directly back of the knives. *   *   *

" *Q.* What did you look down at that brake for ? You were speaking of some brake at the end of the machine.

" *A.* I wanted to see— It opens up and closes. Sometimes it will rub on the wheel going up. Merely a block on top of the wheel, small pulley about seven inches in diameter, and there is a lever underneath it. It works automatically.

" *Q.* What would be the effect if it didn't work just as you wanted it to,—anything serious ?

" *A.* Why, no; not particularly."

The injury was not caused by reason of any defect in the machinery itself. The defendant had furnished a safe machine, a safe place to work, and the injury was caused by the negligence of a fellow-servant of the plaintiff, and for which the defendant was in no wise in fault. It is a general rule laid down many times in this court that it is not the grade of the servant, but the employment, that determines the question of fellow-servant. If they are engaged in the same common enterprise, though in different grades, they are fellow-servants. We think the rule laid down in *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich.

203 (61 N. W. 659, 27 L. R. A. 268), is decisive of this case. It is as follows:

"The true test, it is believed, whether an employé occupies the position of a fellow-servant to another employé, or is the representative of the master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant by which another employé is injured; or, in other words, whether the person whose *status* is in question is charged with the performance of a duty which properly belongs to the master,"— citing McKinney, Fel. Serv. § 23; *Flike* v. *Railroad Co.*, 53 N. Y. 549 (13 Am. Rep. 545); *Crispin* v. *Babbitt*, 81 N. Y. 516 (37 Am. Rep. 521); *Ford* v. *Railroad Co.*, 110 Mass. 240 (14 Am. Rep. 598); *Anderson* v. *Bennett*, 16 Or. 515 (19 Pac. 765, 8 Am. St. Rep. 311).

It was said by Mr. Justice MONTGOMERY in a concurring opinion in that case, at page 212:

"I think it is clear that where the danger or injury results from the operation, and the negligence is that of one who is engaged in the common employment, it cannot in any proper sense be said to be attributable to a fault in providing a safe place to work, or safe machinery or appliances."

See, also, *Schroeder* v. *Railroad Co.*, 103 Mich. 215 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354).

The court therefore should have directed the jury that Edmonds was a fellow-servant with the plaintiff, and that plaintiff could not recover.

Judgment must be reversed, and a new trial granted.

The other Justices concurred.