## MIKOLOJCZAK v. NORTH AMERICAN CHEMICAL CO.

INJURY TO EMPLOYÉ—DEPARTMENT FOREMAN—FELLOW-SERVANTS.
Plaintiff was injured while assisting in breaking down a large quantity of salt in defendant's plant, through the failure of the foreman in charge of the work to give warning that a fall was about to be made. The foreman was one of several such employed in the various departments of the business, having authority to hire and discharge workmen, but being subject to the direction of a superintending engineer and a general manager. *Held*, that the foreman and plaintiff were fellow-servants, and hence defendant was not liable for the injury.

Error to Bay; Shepard, J. Submitted November 12, 1901. Decided December 10, 1901.

Case by Michael Mikolojczak against the North American Chemical Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Defendant owns and operates a plant for the manufacture of chemicals and salt. A large mass of salt had been stored in a packing house, the mass being about 200 feet long, 40 feet wide, and from 10 to 14 feet high. It became hardened by exposure, so that it was necessary to break it before packing. The usual method was first to undermine it by making a cut about 3 feet high and from 15 to 18 inches deep across the mass. This was done by the use of picks. As this salt was picked out, it was removed in wheelbarrows. When the undermining was completed, two of the men would go upon the top of the salt, and drive iron bars or wedges into it until a section —sometimes several tons—would fall off to the floor, where it was then broken up, and wheeled away for packing. In this instance two employés, named Brookmiller and Potts, went upon the top. Usually the men who did the undermining also had charge of breaking down.

When ready to break down, the men going to the top gave warning. Plaintiff was injured by the fall of the salt, which was split off in the manner above indicated. Another employé was injured and one killed by the same fall. Plaintiff charges negligence upon the defendant in failing to warn him that a fall was about to be made.

The resident manager of the defendant, whose stock is mainly held in England, was one Davies. Under him were a Mr. Hutchings, the local superintending engineer, and a Mr. Davis, known as the yard foreman. There are several other departments of the business, each having its foreman. It is claimed that Mr. Davis was the *alter ego*, that Mr. Hutchings was also, and that one or both jointly ordered the fall in this case to be made without notice to those who were working and undermining the salt. The declaration contains three counts,—the first alleging that the direction was given by Hutchings; the second, that it was given by Davis in the presence and with the knowledge of Hutchings; and the third, that it was the concurrent act of both. The defenses claimed are: (1) That no negligence is shown on the part of the defendant; (2) that plaintiff was negligent; (3) that plaintiff was injured by a risk naturally incident to the business; (4) that the proximate cause of the injury was the negligence of Brookmiller and Potts, fellow-servants, in failing to give warning; (5) that Davis and Hutchings were fellow-servants of plaintiff. Plaintiff recovered verdict and judgment.

*Pierce & Kinnane* and *Simonson, Gillett & Clark,* for appellant.

*Isaac A. Gilbert* (*De Vere Hall,* of counsel), for appellee.

GRANT, J. (*after stating the facts*). The first four defenses may be disposed of by saying that they were all controverted questions of fact, and were properly submitted to the jury. If plaintiff was warned or had knowledge that Brookmiller and Potts were about to make the

fall, or if sufficient warning was given and he did not
hear it, and continued about his work, or stood in danger-
ous proximity, he was guilty of contributory negligence.
If he was not warned, and had no knowledge, then no neg-
ligence can be imputed to him. If it was the duty of
Brookmiller and Potts to give warning, and they failed to
do so, that was the negligence of fellow-servants, and the
judge so instructed the jury. The court held that Davis
and Hutchings were the *alter egos* of the defendant, and
that if Davis ordered the fall to be made, and failed to give
notice, then the defendant was liable. This presents the
only question we need to determine.

The duty to give warning was not one which the de-
fendant absolutely owed to the plaintiff. It was an act
which is usually, and almost of necessity must be, dele-
gated to a subordinate. It is within the rule stated by
my Brother Montgomery in *Schroeder* v. *Railroad Co.*,
103 Mich. 223 (61 N. W. 666, 29 L. R. A. 326, 50 Am.
St. Rep. 362):

"The act which he performed or neglected—that of
giving notice of the intention to move the engine—was
such a one as might be, and generally is, intrusted to
subordinates, and related to the mere operation of the
business in its details. * * * It was plainly, there-
fore, the neglect of a fellow-servant, unless it can be said
that the foreman was the vice-principal or *alter ego* of the
defendant."

Defendant had provided a competent foreman in the
person of Mr. Davis. It would be a harsh rule which
would make the defendant liable when it has employed a
competent servant, and that servant does an act which
may be and is delegated to him, and which does not in-
volve an absolute duty which the master owes to his em-
ployé. The law does not impose such a liability unless the
servant has been placed there to represent and stand in
place of the master. Mr. Davies was the general local
superintendent, having entire charge of the business, in
which from 200 to 250 men were employed. Under him

was Mr. Hutchings, who was the superintending engineer, and ordered the salt in this case to be removed in order to take up a pipe underneath. He had instructed Mr. Davis to remove it. The witnesses for the plaintiff testified that Mr. Davies was frequently around overlooking the business of the establishment, and was frequently seen talking with Hutchings and Davis. Plaintiff, and all the other workmen who testified, spoke of Mr. Davis as the yard foreman. There was a foreman provided for each branch of the work. Plaintiff testified:

"William Potts hired me. He was second foreman. My wages were fixed in the office. I had William Potts and Mr. Davis as foremen. Mr. Davis was foreman of the yard,—of the whole ground there outside of the building where they make the chemicals. While I worked there I worked outside, and Mr. Davis was the foreman and William Potts the second foreman. I have heard Mr. Davis direct Mr. Potts what to do. I don't know whether there was any other foreman above Mr. Davis. Mr. Davis would walk around the yard, and look if the people were working, and directed all of the men outside of the yard. There was no other foreman besides Mr. Davis that directed all of the men outside of the yard. Mr. Hutchings was superintendent. Mr. Davis gave directions where to work and how to work, and also directed Mr. Potts where to work; and I think Mr. Hutchings had charge of the whole plant, and was superintendent. * * * Every gang has its own foreman, and above the foreman was Mr. Hutchings. He is the man we call the superintendent."

On cross-examination he testified:

"Mr. Davies is the general manager, and Mr. Hutchings is the superintendent. Mr. Davies goes through the works occasionally, and sees what is going on. He makes the trip once a day, or sometimes once in two or three days. Mr. Hutchings goes around in the same way, and talks with the foremen. I do not know of any other superintendent around there besides Hutchings. Mr. Davies is the general manager, and besides these two I don't know anybody else."

Another workman, a witness for plaintiff, testified that

Mr. Davis was foreman; that Mr. Hutchings was over him; that Mr. Davies was the general manager; that he never watched him to know what he did; and that Mr. Hutchings hired him.

Another laborer, a witness for the plaintiff, testified that Mr. Hutchings—

"Had everything to see about the business that was going on there. He looked after all the business. They called him superintendent. I heard that Davies was general manager. I never saw Davies give any orders. Mr. Davis was kind of a foreman around the yard. He had a gang of men. Any heavy lifting or anything, Davis had to go and do, or his men,—unload coal, load salt on the cars, and one thing and another. Hutchings was above Davis."

On cross-examination he testified:

"Q. There is a laboratory department, and there is a boss over the laboratory department?

"A. There is quite a lot of bosses in every room, I guess. There is a cooper shop there, and I guess there is a boss over the cooper shop. There are 20 salt sheds there, and there is a man named Hawley who is at the head of the salt department. Kelley is boss over the men that work wheeling out salt from the salt blocks. I don't know how many men either Hawley or Kelley had.

"Q. There is a man named Bord Davis. He is kind of a working boss over the repair gang?

"A. He is boss over the yard gang; all the outside work."

On redirect examination he testified: "Hutchings looked after all of those bosses."

The above comprises all the testimony on the part of the plaintiff as to the position held by Mr. Davis. The testimony on the part of the defense is to the same effect, that Mr. Davis is the yard foreman, and acts under the instructions of Davies and of Hutchings. He also had the authority to employ and discharge men, and worked with the men when occasion required.

The question who are fellow-servants has been repeatedly discussed by this court, and the principles govern-

ing the same have been carefully determined. *Bees-ley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (61 N. W. 658, 27 L. R. A. 266); *Schroeder* v. *Railroad Co.*, 103 Mich. 213 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354); *Wellihan* v. *Wheel Co.*, 128 Mich. 1 (87 N. W. 75); *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240); *Hoar* v. *Merritt*, 62 Mich. 386 (29 N. W. 15); *Findlay* v. *Foundry Co.*, 108 Mich. 286 (66 N. W. 50); *Lepan* v. *Hall*, 128 Mich. 523 (87 N. W. 619). A general discussion of the subject is therefore unnecessary. The difficulty lies in applying the rule of those cases to the facts of a particular case. Each case must depend largely upon its own peculiar facts.

The defendant had performed all the duty the law required of it in providing a competent man to attend to the duties of yard foreman, and to direct and assist its employés in the performance of the labor for which they were employed. Mr. Davis, plaintiff, and other yard employés, were engaged in one common employment. All were paid by the day. Their labor was not skilled. It was labor which any man of ordinary intelligence could do or oversee. A foreman was required for the reason that, when several laborers are employed in the same work, it is necessary for the economical performance of the work that there be one man to direct it. For the same reason railroad companies employ foremen of their section gangs and of all their working gangs, and lumbermen employ foremen of their working gangs in the woods. If defendant is liable for this act of its foreman Davis, it would be liable for the act of every foreman in every department of its business, no matter what its grade or character. This is not the law in this State. Mr. Davis was not the general manager or superintendent, as was Mr. Neville in *Shumway* v. *Manufacturing Co.* 98 Mich. 414 (57 N. W. 251); neither was he intrusted with the general supervision of the business, as was the foreman in *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N. W. 82, 20 Am. St. Rep. 496), who had general supervision of

the coal and freight business of the defendant, including the unloading of vessels laden with coal; nor as was the roadmaster or assistant roadmaster of the division of a railroad in *Harrison* v. *Railroad Co.*, 79 Mich. 409 (44 N. W. 1034, 7 L. R. A. 623, 19 Am. St. Rep. 180), and other similar cases; nor as was the mining captain in *Ryan* v. *Bagaley*, 50 Mich. 179 (15 N. W. 72, 45 Am. Rep. 35), who was intrusted with the entire control and management of the work of the mine. This case is controlled by the authorities first above cited.

Judgment reversed, and new trial ordered.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. LONG, J., did not sit.