LEPAN *v.* HALL.

NEGLIGENCE—PERSONAL INJURIES—FELLOW-SERVANTS—FOREMAN OF SAWMILL.

The foreman of a sawmill, having authority, under the direction of the general manager, to employ and discharge workmen, and having general supervision of the mill, but performing more or less manual labor therein, is a fellow-servant of an operative employed in the mill, so that the latter cannot recover against the common employer for injuries received through the negligence of the foreman in directing the conduct of the work.

Error to Bay; Shepard, J. Submitted October 9, 1901. Decided October 22, 1901.

Case by Benjamin Lepan against Edmund Hall for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Oscar M. Springer*, for appellant.

*John E. Kinnane* and *Henry C. Haller*, for appellee.

MONTGOMERY, C. J. Plaintiff was gang sawyer in defendant's mill. As such, it was his duty, when cants or

logs with broomed ends, containing stones and gravel, were going through the gang, to chop off the ends, that the saws might not be injured. While engaged in this work, called "sniping," he was hurt by having the end of a load of cants run against his leg. The assignments of error raise only the question of whether a verdict should have been directed for defendant.

Plaintiff testified that, at the time of the accident, he was standing between the rollers that are between the skidways of the band saw, engaged in the work of sniping. He testified that this work required close attention, and that he necessarily stood in this place, and with his back to the rollers which brought up the cants, depending for protection upon the fact that, unless one of the levers controlling the rollers should be reversed, the load of cants must stop at a certain dead roller behind him, and that, as he testified, it was his duty to reverse the lever to bring the cants beyond the dead roller, or to order it done, testifying: "It was not customary for anybody to pull up without an order from me. I so instructed the men, and the men understood it." This is contradicted by defendant's witnesses, who assert that it was customary to move the cants up without plaintiff's orders.

The testimony shows that the lever was reversed, and the load of cants which caused the injury brought up, by the order of Mr. Fraser, the mill foreman. The testimony of the tail sawyer, who reversed the lever by this order, is that, "from Mr. Fraser's order, I had an idea he did not want the cants any farther than the band-saw skidway, and that is where my intention was to put them;" and that he (witness) was not looking towards plaintiff when he pulled the lever, but looked around afterwards to see if he had the cants far enough, and then the damage was done. Mr. Fraser testified that his direction to the tail sawyer, by motion, was to stop the cants at the band-saw skidway.

Defendant's witness Mr. Morey testified:

"I am in the employ of Mr. Hall,—manager and superintendent, as you might say, of the Detroit mill [the mill in question]. \* \* \* Mr. Fraser was hired as mill foreman. \* \* \* I think he understands every department in the mill. He is competent in every respect,—mechanically and otherwise. I have so much confidence in his ability and efficiency that he has exclusive charge of the department."

This testimony seems to be in accord with that of plaintiff's witnesses as to Fraser's duties about the mill. There was some conflict in the testimony as to how much manual labor Fraser was in the habit of performing, and as to what authority he had in the matter of hiring and discharging men. Upon the latter point Mr. Morey testified:

"I always hired the engineer. The firemen, day and night, I guess I invariably hired. Aside from that, most of the men in the mill probably were hired by Mr. Fraser, after receiving instructions from me. I instructed him when to hire the men, and when to make arrangements when we should start, and also what wages generally to pay. If any changes in the wages were made, he consulted me. I have talked with Mr. Fraser about what sort of men he should hire for the different places in the mill, as to character or efficiency. It was always understood that we were to hire the best men we could get, and to try to have the reputation of paying wages that would enable him to get good, efficient men, when it was practicable. That was always the instruction that Mr. Fraser had with reference to hiring men, so far as was necessary."

One of plaintiff's witnesses testified to statements made to him by Mr. Morey, when declining to interfere with Fraser's refusal to employ the witness, that he (Morey) had nothing to do with the mill, and that Mr. Fraser had full charge of it. Plaintiff testified that Mr. Fraser claimed to him that he had full power to hire and discharge any man in the mill.

Defendant claims that the undisputed testimony shows that Fraser was acting as plaintiff's fellow-servant, at least in giving the order in question. The mill consisted of a lumber mill, proper, a shingle mill, a lath mill, and

the defendant, also, as a part of his operations, conducted a salt mill. The testimony shows that one Connors was foreman of the shingle mill, with similar powers to those exercised by Fraser in the sawmill; one McIntyre was foreman over the lath mill; and one Gillis was foreman over the salt mill. All of these men were under the supervision of Mr. Morey, defendant's superintendent. We think that, under the undisputed testimony, the case falls within our former holdings, and that Fraser must be held to have been a fellow-servant of the plaintiff. It is to be noted that the alleged negligence of Fraser was not an act which it is the master's duty to perform. No complaint can be made that a safe place to work was not furnished to the workmen in the mill. Fraser's order related to the mere conduct of the work, and in the giving of that order he did not occupy the position of the master, within the holdings of this court. See *Schroeder* v. *Railroad Co.*, 103 Mich. 213 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354); *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (61 N. W. 658, 27 L. R. A. 266); *Andre* v. *Elevator Co.*, 117 Mich. 560 (76 N. W. 86); *Findlay* v. *Foundry Co.*, 108 Mich. 286 (66 N. W. 50).

It is very doubtful whether, in any view, it could be said that the order actually given by Fraser was the cause of the injury to the plaintiff. If the testimony of the tail sawyer and of Fraser be credited, it would appear that had the order, as given, been obeyed by the tail sawyer, no injury would have happened to the plaintiff. But, in the view we take of the relation of Fraser to the plaintiff, it is not necessary to determine the case upon this ground.

The judgment will be reversed, and a new trial ordered.

HOOKER, MOORE, and LONG, JJ., concurred. GRANT, J., did not sit.