ERICKSON *v.* VICTORIA COPPER MINING CO.

NEGLIGENCE—FELLOW-SERVANTS.

Plaintiff, while at work in defendant's mine, was injured by a plank falling down an inclined shaft. The timber boss fastened a rope with a half hitch around each end of the plank, securing the lower end with a 10-penny nail. When part way down the shaft, the plank escaped from the rope, and fell to the bottom. The evidence was conflicting as to whether the timber hitch, or boring a hole and inserting the rope, was the customary way of lowering plank. *Held*, that; while the question as to whether the timber hitch was the customary way was one for the jury, the undisputed evidence showed that defendant had furnished proper tools for boring holes, and the neglect to use them by the timber boss was the neglect of a fellow-servant, and a verdict was properly directed for defendant.

Error to Ontonagon; Haire, J. Submitted April 9, 1902. (Docket No. 23.) Decided May 8, 1902.

Case by Erick Erickson against the Victoria Copper Mining Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*John O'Gorman* (*P. H. O'Brien*, of counsel), for appellant.

*Dunstan & Hanchette*, for appellee.

HOOKER, C. J. The plaintiff was an employé of the defendant mining company, and, on the day of the accident out of which this case grows, was engaged, with others, in timbering the mine. One Peterson, who was the timber boss, sent some plank down an inclined shaft of the mine. The evidence shows that the course taken was to take a half hitch with a rope around each end of the plank, the lower hitch being secured by a 10-penny nail driven above it. The shaft was not of uniform grade, and at the depth of 60 or 70 feet the plank escaped from the rope, and fell or slid to the bottom of the shaft, injuring the plaintiff and another who was at work with him. The learned circuit judge who tried the case directed a verdict for the defendant on the following grounds: (1) That it appeared by the uncontradicted testimony that the method adopted for lowering the plank was the customary one among miners; (2) that the timber boss, Peterson, was a fellow-servant of the plaintiff, and that the defendant had furnished suitable tools and materials for the lowering of the plank, and that the negligence, if there was any, was that of Peterson, and consequently plaintiff could not recover.

The plaintiff testified that it was usual in mines to use a timber hitch for sending down plank; that big timbers were sent down with a dog or clevis; and that he had seen plank sent down with these. August Oman testified that he knew the customary way of fastening the rope onto timbers and planks to lower them into a shaft; that he had worked with the timber gang for a couple of weeks, and saw how they sent them down; that they got a timber

dog, and put a half hitch on the stick of timber, when they sent them down; that, if they do not use that, they bore holes through, and put a bolt through and chain it. He never saw them send down timbers simply tied with rope around the plank, without any bolt or hook. Charles Johnson testified:

"I have worked a good many years in mines, and at timbering some. I know the customary way of securing planks so as to send them down a shaft. They generally used to bore a hole through to send a plank down, or either have a clevis, and put it through, and then tie it with a rope. If they don't have that, they just bore a hole through, and put a rope through it, or else they used to use timber dogs with timbers."

There was much testimony offered by the defendant, from miners of long experience, that the timber hitch was the customary way for lowering planks into a mine, but the testimony quoted raised a question of fact for the jury.

The undisputed testimony shows that Peterson, the timber boss, was a fellow-servant of plaintiff, but the plaintiff claims that the defendant failed to furnish him with augers for the purpose of boring holes into the planks. There was testimony on the part of the defendant that augers were furnished; that the tools were kept in the warehouse, and were at the command of the timber boss at any time that he chose to get them; that they were in the habit of going to the warehouse for such tools as they needed to use. In contradiction of this there is the testimony of Oman, who testified that there was a box near the shaft where they put tools that were in use, and that he had looked in the box on several occasions, and had never seen any augers in it. There was the testimony of Peterson that he did not use any augers; that there were some bits in the box, but not large enough to bore holes of sufficient size in the plank; that he never took the trouble to look in the warehouse for augers, because he thought the half hitch the usual and safe method of lowering timber. Neither the testimony of Oman nor that of

Peterson in any way contradicts the clear testimony that augers of proper size were to have been had at the warehouse, where Peterson and all other employés were in the habit of getting tools when needed. We think, therefore, the circuit judge did not commit error in holding that the undisputed evidence showed that the defendant furnished the proper tools, and that the neglect to use them was the neglect of Peterson, a fellow-servant. It was therefore unnecessary to submit the first question discussed to the jury, as the latter was conclusive of the case.

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.