## KREPS *et al.* v. BRADY.

No. 2023.   Opinion Filed July 18, 1912.

Rehearing Denied June 24, 1913.

(133 Pac. 216.)

1. **CONSTITUTIONAL LAW—Equal Protection—Fellow Servants.** Section 36, art. 9, of the state Constitution, abrogating the common law doctrine of fellow servant in the case of employees of railroad, street railway, interurban railway, and mining companies, is not repugnant to the "equal protection" clause of the fourteenth amendment to the federal Constitution.

2. **MASTER AND SERVANT—Fellow-servant Doctrine—"Mining."** Drilling a well in search of oil or gas is not mining within the meaning of section 36, art. 9, of the state Constitution.

3. **CONSTITUTIONAL LAW—Master and Servant—Abrogation of Fellow-Servant Doctrine.** For the purpose of abrogating or modifying the common-law rule of fellow servants, it is competent for the lawmaking power of a state, without offending against the "equal protection" clause of the federal Constitution (fourteenth amendment), to classify railroad, street railway, and mine employees because of the hazard attached to those employments; and a constitutional provision doing this, in language broad enough to include all such employees, is not to be restricted to those employees only who are engaged in the specially hazardous work of such vocations, but extends to all employees doing work essential to be done in the carrying on of the business of railroading, mining, etc.

4. **MASTER AND SERVANT—Fellow-Servant Doctrine—Liability of Master.** Where the common-law doctrine of "fellow servant" has not been abrogated or modified by constitutional or statutory provisions, the master is not liable to a servant for an injury occasioned by such servant's colaborers in the performance of some mere detail of the common employment, where the performance of the thing done in no sense involved a non-delegable duty of the master.

(Syllabus by Brewer, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by James A. Brady against A. T. Kreps, Jr., and another. Judgment for plaintiff, and defendants bring error. Reversed, with directions.

*N. B. Maxey, Thos. W. Leahy,* and *J. B. Campbell,* for plaintiffs in error.

*John R. Thomas, Grant Foreman,* and *Luther James,* for defendant in error.

Opinion by BREWER, C. The defendant in error, Brady, as plaintiff, sued in the district court of Muskogee county for personal injuries and obtained a verdict and judgment. The facts out of which the suit arose are substantially as follows: The plaintiffs in error, defendants below, were partners engaged in drilling oil wells under contracts with the owners of oil leases. While so engaged in drilling a well Brady was injured. It takes two men to operate a drill; in the oil fields four are assigned to each well and they work in two shifts (called towers) of two men each. These two men are known, one as a driller, the other as a tool dresser. Brady was a tool dresser. The drill is run by an engine. The driller operates the levers near the mouth of the well, except when steam is being raised, when he attends to the brake. He has charge of the hole being made and is responsible for its going down straight. The tool dresser fires and oils the engine, heats the bits, and helps to sharpen them, empties the baler, and in other ways assists the driller. When taking down the stem to which the bit is attached, he ascends into the derrick and pulls the lower end of the stem outside the girder, or girt, so that it may be lowered to the ground. The stem is a piece of steel 35 feet long to which the bit is attached. The derrick or rig is 20 feet square at the bottom; four corner posts extending upward and inward 72 feet to where the derrick is 3 or 4 feet square. A girder of heavy timber encircles these posts 10 feet from the ground; other girders 8 feet apart continue up to the top. Other timbers are used as braces to make the structure substantial. The stem works up and down in this derrick; it is taken down or out whenever the bit needs sharpening, or the machinery is to be moved. The driller and the tool dresser must each be experienced men. They receive high

wages; the driller commanding a slightly higher wage than the dresser. To take down the stem the tool dresser operates the engine and hoists the stem up into the derrick so high that the lower end may be swung clear of the lowest girder. The driller stands at the brake, and when the stem is so raised he holds the brake and the tool dresser goes up into the derrick and, by means of a rope previously tied loosely around the stem, pulls or swings the stem outward over the girder, and the driller, using the brake, lowers the stem into a wagon on the ground.

On the day of the injury, Brady, operating the engine, raised the stem into the derrick preparatory to taking it down. The rope had been tied around it by the driller, before it was raised. Brady went up into the derrick and found he had not raised the stem high enough to clear the girder. The driller hollowed up at him to take it out under the girder. In doing this he walked out on a walking beam where he could not support himself against the timbers of the derrick. He pulled down and outward on the rope; it came united; and he lost his balance and fell to the ground and was injured. It was alleged as the gravamen of the action that the driller was negligent in trying the rope so that it could come united.

It is contended by plaintiffs in error that Brady was the fellow servant of the driller and that therefore they are not liable. The defendant in error answers this by saying: First. That the work in which the injury occurred was mining, and that section 36 of article 9 of the Constitution, having abrogated the common-law doctrine in mining cases, whether they were fellow servants is immaterial. Second. That, if it should be held that drilling an oil well is not mining within the meaning of the Constitution, then the case falls within what has been termed the "superior servant" or vice principal rule. The plaintiff in error replies: First, that the drilling of oil wells is not mining. Second, that if the production of oil and gas should be held to be embraced within the term mining used in the constitutional provisions, then that the work being done

in this case was not inherently dangerous and involved none of the risks and hazards usually incident to mining operations, and therefore the provision could not apply to this class of servants, even though engaged in mining. These contentions cover all the points in the case.

The portion of the Constitution necessary to be studied follows:

"Art. 9, sec. 36. The common law doctrine of the fellow servant, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant or servants of the common master, is abrogated as to every employée of every railroad company and every street railway company or interurban railway company, and of every person, firm, or corporation engaged in mining in this state; and every such employee shall have the same right to recover for every injury suffered by him for the acts or omissions of any other employee or employees of the common master that a servant would have if such acts or omissions were those of the master himself in the performance of a nonassignable duty. * * * And every railroad company and every street railway company or interurban railway company, and every person, firm, or corporation engaged in *undergound mining* in this state shall be liable under this section, for the acts of his or its receivers. Nothing contained in this section shall restrict the power of the Legislature to extend to the employees of any person, firm, or corporation, the rights and remedies herein provided for." (Italics ours.)

This clause (section 36, art. 9, Const.) is not repugnant to the federal Constitution. *Coalgate Co. v. Bross,* 25 Okla. 244, 107 Pac. 425, 138 Am. St. Rep. 915; *M. K. & T. Ry. Co. v. Richardson,* 229 U. S. 601, 31 Sup. Ct. 715, 55 L. Ed. 603; *Id.* (Tex. Civ. App.) 125 S. W. 623; *St. L. & S. F. Ry. Co. v. Arms* (Tex. Civ. App.) 136 S. W. 1164.

In passing, however, it is necessary to briefly notice the contention made here and supported by considerable authority that this provision is only constitutional in so far as it is sought to affect employees actually engaged in the inherently dangerous employment of operating trains, street cars, mines, etc. In other words, that the inherent danger of the em-

ployment justifies the law and keeps it from being obnoxious to the "equal protection of the law" clause of the fourteenth amendment. And that, as to employees not so engaged in the hazardous employment, it would be obnoxious to said clause. This contention has been sustained by a number of states in construing statutes abrogating the common law of fellow servants, notably in Mississippi in the case of *Bradford Const. Co. v. Heflin,* 88 Miss. 314, 42 South. 174, 12 L. R. A. (N. S.) 1040, 8 Ann. Cas. 1077. Minnesota, in the case of *Blomquist v. Great Northern Ry. Co.,* 65 Minn. 69, 67 N. W. 804, by construction of the law abrogating the fellow-servant doctrine, limited its operation to "those employees who are exposed to the peculiar dangers attending the operation of railroads, or what are, for brevity, called "railroad dangers." Indiana likewise by a line of decisions (*Indianapolis Traction Co. v. Kinney,* 171 Ind. 612, 85 N. E. 954, 23 L. R. A. [N. S.] 711) so limited the effect of a similar provision. These decisions were all based on what was supposed to be the views of the Supreme Court of the United States in various decisions, notably that of *Missouri Pac. Ry. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107. In a late case in the Supreme Court of the United States, however (*Louisville & N. R. Co. v. Melton,* 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921), this same contention was held to be unsound. That case was taken to the Supreme Court on writ of error to the Court of Appeals of Kentucky (127 Ky. 276, 105 S. W. 366, 110 S. W. 233, 112 S. W. 618), which had affirmed a judgment for personal injuries sustained by a carpenter engaged with others in erecting a coal tipple for the railroad. The injury occuring in Indiana, the law of Indiana abrogating the fellow-servant doctrine as to railroad employees was invoked. The contention of the railroad was that this carpenter, although in the employment of the railroad, was not engaged in work that involved the perils and hazards of railroading, and that, under the facts of that case, the Indiana statute would be unconstitutional, although admittedly constitutional in cases where the

employee was engaged in train service. The Court of Appeals of Kentucky held that:

"* * * For the purpose of abrogating or modifying the common-law doctrine of fellow servant, it was competent for the lawmaking power of a state, without offending against the equal protection clause, to classify railroad employees because of the hazard attached to their vocation, and that a statute doing this need not be confined to employees who were engaged in and about the mere movement of trains, but could also validly include other employees doing work essential to be done to enable the carrying on of railroad operations."

The Supreme Court of the United States, after stating the holding of the Kentucky court and reviewing its own various decisions, affirms the case, and in the course of the opinion says:

"And coming to consider the concrete application made of these general principles in the decisions of this court which have construed the statute here in question, and statutes of the same general character enacted in states other than Indiana, we think, when rightly analyzed, it will appear that they are decisive against the contention now made. It is true that in the Tullis case, which came here on certificate, the nature and character of the work of the railroad employee who was injured was not stated, and that reference in the course of the opinion was made to some stated cases, limiting the right to classify to employees engaged in the movement of trains. But that it was not the intention of the court to thereby intimate that a classification, if not so restricted, would be repugnant to the equal protection clause of the fourteenth amendment will be made clear by observing that the previous case of *Chicago, K. & W. R. Co. v. Pontius,* 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675, was cited approvingly, in which, under a statute of Kansas classifying railroad employees, recovery was allowed to a bridge carpenter employed by the railroad company, who was injured while attempting to load timber on a car. And in the opinion in the Pontius case there was approvingly cited a decision of the Court of Appeals of the Eighth Circuit (*Chicago, R. I. & P. R. Co. v. Stahley,* 11 C. C. A. 88, 62 Fed. 363), wherein it was held that under the same statute an employee injured in a roundhouse while engaged in lifting a driving rod for attachment to a new engine could

recover by virtue of the statute. All this is made plainer by the ruling in *St. Louis Merchants' Bridge Terminal R. Co. v. Callahan,* 194 U. S. 628, 24 Sup. Ct. 857, 48 L. Ed. 1157, where, upon the authority of the Tullis case, the court affirmed a judgment of the Supreme Court of Missouri, which held that recovery might be had by a section hand upon a railroad, who, while engaged in warning passersby in a street beneath an overhead bridge, was struck by a tie thrown from the structure. While, as we have previously said, it is true there are state decisions dealing with statutes classifying railroad employees sustaining the restricted power to classify which is here insisted upon, we do not think it is necessary to review them or to notice those tending to the contrary. They are referred to in the opinions rendered in the court below. Nor do we think our duty in this respect is enlarged because, since the judgment below was rendered, the court of last resort in Indiana (*Indianapolis Traction Co. v. Kinney,* 171 Ind. 612, 85 N. E. 954, 23 L. R. A. [N. S.] 711, and *Cleveland, C., C. & St. L. R. Co. v. Foland* [174 Ind. 411], 91 N. E. 594 [92 N. E. 165], decided April 20, 1910) has, upon the theory that it was necessary to save the statute in question from being declared repugnant to the equality clause of the state Constitution and the fourteenth amendment, unequivocally held that the statute must be construed as restricted to employees engaged in train service."

See, also, *Mobile, Jackson & K. C. R. Co. v. Turnipseed,* 219 U. S. 39, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A. 463.

This case, however, does not depend for its solution upon the nature of the work being done at the time of the injury. If prospecting for oil or gas, or the production of same, comes within the classification of the Constitution under the term "mining" as used therein, then the common-law doctrine of fellow servants cannot avail the defendants in this case. If not so embraced, then such doctrine must be applied to this case.

Does drilling a well in quest of oil and gas by a contractor with the owner of the lease constitute mining within the meaning of the Constitution? If so, this case must be affirmed; if not, then the inquiry must proceed to the appli-

cation of the common law of fellow servant to the facts of the case as presented.

"It is a cardinal rule in the interpretation of constitutions that the instrument must be construed as to give effect to the intention of the people, who adopted it. This intention is to be sought in the constitution itself, and the apparent meaning of the words employed is to be taken as expressing it, except in cases where that assumption would lead to absurdity, ambiguity or contradiction." (Section 8, Black on Interpretation of Laws.)

"A constitution should be construed with reference to, but not overruled by, the doctrine of the common law and the legislation previously existing in the state." (Section 11, Black on Interpretation of Laws.)

"The words employed in a constitution are to be taken in their natural and popular sense, unless they are techincal, legal terms, in which case they are to be taken in their technical signification." (Section 16, Black on Interpretation of Laws.)

"The object of construction as applied to written constitutions is to give it the intent of the people in adopting it. In the case of all written laws, it is the intent of the law giver that is in force." (Cooley, Const. Limitations, 69.)

Does operating a well drill on the surface, even though for the discovery of oil, meet the popular idea or generally accepted definition of mining? It is true that oil is technically speaking, a mineral; but would any person, upon approaching an oil well six or eight inches in circumference, think of calling it a mine, or the act of boring it mining? We think not.

Webster's Dictionary is probably more often consulted by the people generally than any other. It defines a mine thus:

"A subterranean cavity or passage, especially a pit or excavation in the earth, from which metallic ores or other mineral substances are taken by digging; distinguished from the pits from which stones only are taken, and which are called quarries."

In *Marvel v. Merritt,* 116 U. S. 11, 6 Sup. Ct. 207, 29 L. Ed. 550, the court, referring to mines and minerals, says:

"The words used are not technical, either as having a special sense by commercial usage or as having a scientific

meaning different from their popular meaning. They are the words of common speech, and as such their interpretation is within the judicial knowledge, and therefore matter of law."

In defining the word "mine," Cyc. vol. 27, 532, says:

"The primary meaning of the word 'mine,' standing alone, is an underground excavation made for the purpose of getting minerals; a pit or excavation in the earth from which metallic ores or other mineral substances are taken by digging. It is also extended to a quarry or other place where anything is dug."

"A 'mine' is a work for the excavation of minerals, by means of pits, shafts, levels, tunnels." etc. (*Murray v. Allred,* 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740.)

"Mines," according to Jacob's Law Dictionary, "are quarries where anything is digged."

"To 'mine' is defined to dig a pit or mine, to dig in the earth for minerals, etc., and appears to apply more especially to underground work." (*Commonwealth v. Brookwood Coal Co.,* 25 Pa. Co. Ct. R. 55.)

"Whether any excavation be a mine or not depends on the mode in which it is worked, and not on the substance obtained from it." (*Rex v. Dunsford,*) 2 Adol. & Ell. 568.

"A peculiar shaft sunk from the surface of the land for the purpose of raising clay out of the strata, which was done by a steam engine and other mining apparatus, the excavation being similar to those made for working coal and metallic mines, and the mode of raising clay the same as used in a coal mine, is a clay mine." *Rex v. Bretell,* 3 Barn. & Ad. 424.)

In testing the intention of the framers of this section, we find that, in the provision extending the benefits of the act to receivers of companies coming within the classification, the word "underground" is used in connection with mining. This appears to be significant of the intention pervading the whole section. If other than mining which requires underground work was intended in the first part of the section, what reason could be given for not extending the benefits thereof, where such other mines are in the hands of receivers? None can be

perceived. There is another reason why drilling for oil or gas was probably not intended to be embraced in the terms used. To prevent a conflict with the fourteenth amendment to the Constitution of ·the United States, a classification of this kind must include all coming fairly within the class referred to. Drilling a ·well for water would be performed in the same manner as if drilling for oil or gas. By no stretch of the imagination could such an operation be held to be mining; · therefore the act, if intended to embrace oil well drilling, and not to embrace drilling for water, would probably be objectionable to the federal Constitution in not affording "equal protection of the law."

In ascertaining intent, ·we may also look to the laws of the two territories at the time and prior to the making· of the Constitution. Mansfield's Digest of the Laws of Arkansas in force in the eastern part of the state contained no mining law. Oklahoma territory had merely some criminal laws regarding acts done about a mine. It had, however, passed in 1905, just prior to the assembling ·of the constitutional convention, a well-defined code of law relating to the production of "oil and gas." These laws use the terms "wells," and the ·work of securing either is called "operating." Nowhere is the term "mine" or "mining" used in the law in force when the convention was considering this provision. (Sess. Laws 1905 p. 26, p. 309.)

The first Legislature, of which many members of the constitutional convention participated, passed a most comprehensive law relating to mines and mining and without once using the term "oil" or "gas." Other legislation, complete in itself, dealt with "oil" and "gas" and nowhere in it used the term "mine" or "mining." These laws, practically contemporaneous with the making of the Constitution, may be considered in determining the intention of that body. From all of which we conclude that this case does not come under the provisions of the Constitution relied upon.

The remaining question is: Was Brady, according to this record, injured in consequence of the negligence of a fellow servant, within the meaning of that term as it is used in the rule which exempts the master from liability for injuries resulting from the negligence of a fellow servant? In this case but two persons were present when the injury occurred—the plaintiff and the driller. At the time of trial the driller could not be found, and the facts of the injury rest solely on the plaintiff's testimony. It is not claimed but that the machinery, tools, appliances, apparatus, and instrumentalities used were all of a proper and suitable kind, and were in good condition and free from defects. That the two men were both engaged in hard manual labor under the same employer, working in conjunction, in a common undertaking to a common end, and that the thing done was not ordinarily dangerous, is shown by all the proof. That while prosecuting the work each did certain particular things, but that many of the varying acts and details necessarily needed to be done in each day's work, as the occasion arose, were done by whichever of the men happened to be best situated at the time to attend to it. Such was the detail of tying the rope on the stem. This was not the special duty of either. It was done by whichever of the two could do it most conveniently. It was a mere detail of the day's work. Under no decision that has been cited, or that we have found, would this be held to be a part of the master's work or fall within the master's duty.

In illustrating what would be the act of a fellow servant, even in the presence of the master, the court in *Blackman v. Thomson-Houston Co.*, 102 Ga. 71, 29 S. E. 123, says:

"There are some appliances so simple in their nature as even the most unskilled workman may be safely intrusted with their erection and use. Two pieces of timber used as a fulcrum and lever, in a broad sense, constitute an appliance. Their use involves the application of scientific principles of a high order; and yet these principles are so simple and so well understood that the negligence of a fellow servant in placing

these two pieces of timber in position for use by other fellow servants could not be imputable to the master." ·

This proposition has perhaps had the attention of as many courts and the application of the learning of as many wise men as any question in the law; and, while it is admitted in practically all courts that the master is not liable to his servant for an injury resulting from the negligence of a fellow servant in the same common service, yet the difficulty has been found in the application of the rule to the facts of a given case and in the development of exceptions to the general rule. The question always arises. Did the servants bear that relation toward each other? The courts seem to have been unable to announce any definite principles formulated into a general rule sufficiently comprehensive to govern in all the multitude of cases in which it is involved. We agree with the Supreme Court of Missouri in the case of *Parker v. Hannibal & St. Joe Ry. Co.,* 109 Mo. 379, 19 S. W. 1123, 18 L. R. A. 802, in the statement:

"The main and only difficulty has been to satisfactorily determine at all times whether the employment was a common service and the employees fellow servants within the meaning of the rule. And after due consideration we are of the opinion that, unsatisfactory as it may seem, the rule itself must remain general, its application specific, as the cases arise."

However, in this jurisdiction the rule as to fellow servants and vice principals, in so far as it is involved in this case, seems to be settled. Indeed, the rule of vice principal, as stated in the opinions of this court noted below, could be extended much farther than it has been and yet not change the conclusion that in this case, as made in the record, the driller and tool dresser were fellow servants in the act that caused the injury. Indeed, upon a careful examination of the evidence and every authority cited by the defendant in error, we conclude that the decisions are extremely rare under which a doctrine of vice principal is announced so broad as to take this case out of the rule invoked.

In the case of *Van Winkle v. Brooks,* 29 Okla. 351, 116 Pac. 908, it is said in the syllabus:

"In order to constitute a foreman or boss of a gang of laborers employed by a corporation in the construction of a water tank in connection with an oil mill a 'vice principal,' for whose negligence in the management of that part of the work the corporation will be liable for personal injuries to any of those employed under him and who were subject to his discretion and control, the master must confer upon such boss or foreman the entire and absolute management of the entire department; retaining no oversight and exercising no discretion of its own as to the conduct of such department, except that it is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe materials to work on, and safe fellow servants and coemployees, and, if the work is such as to require it, to require safe and proper rules and regulations for conducting the same. Negligence in the performance of any of these positive duties will render the master liable without regard to the standing or authority of the employee through whose fault the injury is occasioned. If the injury is not the result of an omission to perform one of these positive duties of the master, but is occasioned by the negligence of such foreman, such foreman will be deemed a 'fellow servant' with the person injured, even though he has power to oversee the men and direct the work directly under his charge, unless his authority in his department is entire and absolute. If he is subject to the control of one or more over him in the management of his department, he is a fellow servant with those under him."

This case follows the case of *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 422, 79 Pac. 260, and *Mollhoff v. C., R. I. & P. Ry. Co.,* 15 Okla. 540, 82 Pac. 733, decided by the Oklahoma territorial Supreme Court, and while the injury in the Van Winkle case occurred prior to statehood, as has been suggested, even a most liberal expansion of the rule therein announced would not avail to save this case, if we are to remain within the current of judicial decisions. See, also, *Erickson v. Victoria Copper Mining Co.,* 130 Mich. 476, 90 N. W. 291.

It follows that under the views herein expressed the plaintiff below failed in the proof to establish any liability against the defendants. And as there was but one witness to the facts of the injury, and he the plaintiff, that a new trial would be a useless thing, and that the case should be reversed and judgment entered for defendants below.

By the Court: It is so ordered.