CUSICK *v.* TAMARACK MINING CO.

MASTER AND SERVANT—RISKS ASSUMED—ROPE—INSUFFICIENT APPLIANCES—NEGLIGENCE.

Where an employee and his superior servant selected a rope from a number that their employer provided, and the employee twisted the rope so as to tighten it and knew how much strain he was putting on it, he assumed the risk of injury from its subsequent breaking while it was being used as a guy.

Error to Houghton; Cooper, J., presiding. Submitted November 13, 1913. (Docket No. 105.) Decided March 26, 1914.

Case by Daniel Cusick against the Tamarack Mining Company for personal injuries. Judgment for

defendant, upon a directed verdict. Plaintiff brings error. Affirmed.

*A. W. Kerr (Albert T. Streeter,* of counsel), for appellant.

*Allen F. Rees (Rees, Robinson & Petermann),* for appellee.

One Martin acted in the capacity of surface boss and carpenter boss at defendant's shafts Nos. 3 and 4. Plaintiff was the foreman of a gang working upon the surface at those shafts, under Martin. It was desired to take down the shaft house at No. 4. This house stood about 200 feet distant from the engine house. From a drum in the engine house to a pulley upon the top of the shaft house ran a steel hoisting cable which was supported upon four pulley stands (single 12x12 upright timbers morticed into a frame at the base), of varying height; the one nearest the shaft house being about 45 feet high. This stand was guyed to the shaft house by a wire cable. To take down the shaft house it became necessary to remove this guy cable. As a consequence it became necessary to otherwise support or guy the pulley stand nearest the shaft house.

Under the direction of Martin, plaintiff with three or four of his crew went to the rope room, and there a rope was selected. It was a nearly new hemp or manilla rope, 1¼ inches in diameter. Plaintiff participated in its selection, though Martin seems to have finally directed plaintiff and his men which rope to take. There were many other ropes in the storeroom from which the selection was made. The rope was fastened to the top of the pulley stand, carried to the shaft house, and there tied to a timber at the mouth of the shaft. It was drawn as tight as possible by the men, but they were unable, by the exercise of mere strength unaided by mechanical means, to make it

taut enough to serve the purpose. Whereupon plaintiff, himself, with one of his men took a "swifter" (an iron bar 6 feet long), and taking a bight in the rope twisted upon the bar until the rope was made sufficiently taut. The "swifter" was then made fast. After the selection of the rope, Martin does not appear to have been present. This work was done about 9 o'clock in the forenoon. A gin-pole was then erected near the shaft house and was guyed, one of the guys running from the pole to the engine house. This line got caught under the platform on top of the pulley stand nearest the shaft house, and it became necessary to release it. At about 2 o'clock, plaintiff was ordered by Martin to go up and release the line. This, plaintiff attempted to do, and, when near the top, the rope parted at the point where the "swifter" had been applied, and plaintiff was precipitated to the ground, thereby receiving the injuries on account of which he brought suit.

At the conclusion of plaintiff's case, the learned circuit judge directed a verdict in favor of defendant in the following language:

"Now the first question that comes to the court for determination is right there in the selection of the guy rope. It appears from the evidence of the plaintiff that the crew who were doing this work and who were under the immediate charge of Mr. Cusick, under the directions of the man who superintended the work and under whom Capt. Cusick was working, Capt. Martin, told them to go and get a guy rope. He went with them. Now it does appear from the evidence they all took part in looking for a guy rope to do this work with. It further appears Capt. Martin was the man who found a rope that was deemed satisfactory. He said that rope would do, and it was selected and taken for the purpose. Now my mind is not entirely clear upon the question as to whether or not all these men were fellow-servants in the selection of this rope. They all having taken part in the work, it would appear to me, from the evidence as

it appears in the case, that had Mr. Cusick found the rope in question, or another rope that seemed satisfactory, that rope would have been taken. Or if any one of the crew who were looking for a satisfactory rope had found one, either this or another, that that rope would have been taken. It does appear that the crew as a whole, including Capt. Martin, were simply working with a view in picking out a rope, and in doing that he was taking part with the crew and helping them to carry on this work. However, even assuming that he did act as vice principal for the company and did pass upon this rope, and that it was upon his judgment that it was selected and his judgment alone, nevertheless the evidence is that Mr. Cusick saw the rope, and that he had many years of experience and was able to pass judgment upon the rope himself, and understood just what rope was being used as a guy to this pulley stand.

"Now the rope was put on as a guy, under the direct supervision of Mr. Cusick, and after it was on it was found necessary to go up the pulley stand, and, under the directions of Capt. Martin, Mr. Cusick went up. Now when he went up the pulley stand he knew just as much about the conditions there as Capt. Martin did or as any one could. He had seen the wire guy rope removed or loosened, and he himself had directed the putting on of the rope guy which took the place of the wire guy. He knew precisely just what that rope guy was doing. He knew the work that it was called upon to do, to hold up this pulley stand, and the other pulley stands in conjunction therewith, so far as their weight would be upon it. He was there, and he had all the knowledge that the company had, through Capt. Martin. He had the same ability to see and understand and appreciate just what the situation was there, and it seems to me that whatever danger there was in going up this pulley stand he assumed in going up.

"Now, if in the exercise of reasonable care and diligence, Capt. Martin, acting for the company, could not have appreciated that there was danger of it coming down, then, as I understand the rule of law, the company would be relieved of liability, if he was exercising all the care an ordinarily prudent man would exercise. Insomuch as Mr. Cusick had full knowl-

edge of all the facts and circumstances and the work that the guy rope was doing, then it seems to me that he did assume whatever risk there was in going up this pulley stand. Therefore the company is relieved from liability.

"Now, there is no evidence in the case as to just what really did cause this rope to break, whether there was a defective rope, whether it was drawn too tight, or whether there was too much work put upon it for a rope of that size. There isn't any evidence here from which the jury could conclude what really caused the breaking of that rope, and there isn't any evidence, as I remember it, in the case that Mr. Cusick even did not appreciate the danger, if there was a danger, in going up the pulley stand. I think the record is silent upon that question. In any event, having every opportunity for it, knowing just what was supporting that pulley stand when he did go up it, he certainly would be held, in my opinion, to assume the risk of its falling when he was upon the stand.

"Now it is not a case where a man is sent up who is not acquainted with the nature of the work or the dangers. Mr. Cusick was not an ordinary workman; he was a man in charge of this crew of men there, and in the absence of Capt. Martin he would have been the boss, the man in charge; and it seems to me the evidence really shows this, that when Capt. Martin was there doing this work, he and Mr. Cusick worked together. They were engaged as fellow workmen in carrying on this work. But, however, even if Capt. Martin was a superior officer and represented the company, I am satisfied, under the evidence in this case, Mr. Cusick did assume the risk. For that reason, a verdict will be directed in favor of the defendant."

Plaintiff has removed the case to this court for review by writ of error.

BROOKE, J. *(after stating the facts).* The sole question argued by plaintiff in his brief is that defendant was negligent in selecting an insufficient rope. The record contains no evidence that the rope

selected was in fact insufficient for its intended use, except the fact that it broke under the circumstances indicated in the statement of facts. On the contrary, it is in evidence that the rope was new, or nearly new, and that it "looked good." That the rope parted at the point where the "swifter" was applied might reasonably give rise to the inference that it broke because of improper use and not because of insufficiency. It is, we think, quite apparent that it would be possible, with the instrument applied, to twist a rope of this size completely off. It is not claimed that defendant was in any manner responsible for the way in which the rope was used. The method of use was wholly under the direction of plaintiff himself.

It is undisputed that in the rope house defendant had supplied a sufficient number of ropes of proper quality and size to be used as guys for the purpose for which this rope was used.

At the time of the accident the defendant was operating its mine under the following management: Judge Haire, general manager; Mr. Uren, superintendent; Mr. Been, assistant superintendent; Mr. Martin, surface boss at shafts Nos. 3 and 4.

Under this situation it is the claim of the defendant that the selection of the rope by Martin, even if not participated in by plaintiff, was the act of a fellow-servant, for which, if negligently performed, the defendant is not liable, citing Lepan v. Hall, 128 Mich. 523 (87 N. W. 619); Erickson v. Mining Co., 130 Mich. 476 (90 N. W. 291); Page v. Pure Food Co., 142 Mich. 17 (105 N. W. 72); Argersinger v. Power Co., 164 Mich. 282 (129 N. W. 889).

It is unnecessary, however, to pass upon this phase of the defense, as we are satisfied that the direction was justified upon the ground that plaintiff had assumed the risk. The plaintiff was a man upwards of 50 years of age who had had a large experience in handling ropes of all kinds. He saw the pulley stand

and, as well as any other, could estimate the amount of strain it would put upon the guy rope he intended to apply. He himself applied it and doubtless believed it to be safe and adequate when he ascended the pulley stand. Whatever danger there was was quite as obvious to him as to Martin. Indeed, in the light of the event, it may be said to have been more apparent to him than to Martin, because the rope broke at the point the "swifter" was attached, and he alone knew the strain he had applied by the use of that instrument. See *Coleman* v. *Cartage Co.*, 174 Mich. 231 (140 N. W. 539), and cases there cited.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.

